## THE SCANDINAVIA.

(District Court, D. Maine. October 16, 1907.)

No. 28.

1. ADMIRALTY—MASTER AND SERVANT—ASSUMPTION OF RISK.

The doctrine of assumption of risk is applied in admiralty as fully as in other branches of jurisprudence, notwithstanding the rule that damages will in some cases of concurrent negligence be divided.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Admiralty, § 302.]

2. SHIPPING—INJURY OF SERVANT—DEFECTIVE APPLIANCE ON VESSEL.

Libelant had been employed as fireman on a tug, and was the only person who remained on board at the time of her sale, when she was out of commission and lying at a wharf for repairs. He was told by the new engineer that he might stay in the employment, and remained on the vessel while the repairs were being made. Among the equipment was a ladder used in passing from the tug to the wharf, one rail of which was broken off at the end, so that, when that end was put down, the ladder was likely to fall; but it could be safely used by placing the other end down. Libelant's attention had been called to the condition of the ladder by the former owner, and he was advised as to the proper manner of using it; but the new owner had no knowledge of the defect. Libelant went on shore one evening, using the ladder, which he left on the wharf. On his return he placed the ladder with the broken end down, and it fell with him, causing his injury. *Held*, that he assumed the risk of using the ladder in its known condition, and that his injury was due to his own want of care, and the vessel was not liable therefor.

In Admiralty. Suit for personal injury.

Dennis A. Meaher, for libelant.
Benjamin Thompson, for claimant.

HALE, District Judge. The libel in this case claims damages in the sum of $4,000 for personal injuries received by the libelant on Sunday evening, April 23, 1905, while going on board the steam tug Scandinavia, then lying for repairs on the westerly side of the Portland Shipbuilding Company's wharf, on the South Portland side of Portland Harbor.

The libel alleges that the libelant was fireman on the tugboat, and, at the time of the injury, was going on board for the night; that he placed a ladder belonging to the tug on top of the house, the other end resting on the wharf; that the ladder was one of the furnishings of the boat, and was used for the purpose of going on board; that, by reason of its broken condition, the libelant fell from it, as he was passing over it, and was thrown to the rail, and was injured. The case shows that the ladder, 16 feet long, had one of its side rails broken off, at one end, at the point where the first round entered the rail. The Scandinavia is a vessel of about 37 net tons. It was conveyed to the claimant, the Central Wharf Steam Towboat Company, April 20th, three days before the injury. Up to that date it had been owned by James F. Perkins, and used by him in the towage business. For a few weeks before the injury Mr. Perkins had employed libelant as fireman on board the boat. For about five days before the purchase of the tugboat by the claimant she was at the South Portland wharf for the purpose of being examined. During the negotiations she was taken upon the ways, and then back to the wharf, where she lay at the time of the injury. The libelant testifies that, at one time, about two weeks before the injury, while he was in the employment of Capt. Perkins, he had put this ladder up "bad end down," and that Capt. Perkins said to him: "Look out for that, Jack; one end is broken;" and that he then turned the ladder around and put the broken end up; that afterwards he continued to work for Capt. Perkins, and used the same ladder, which was the only ladder aboard the tug, either while Capt. Perkins owned her or after the sale to

the claimant. The case shows that the condition of the ladder was never pointed out to the claimant; that its agents examined the boat with reference to her general appearance only, but not in detail; and that they had given orders for her to be fully repaired, and had placed no captain in charge. At the time of the purchase the libelant was the only person left aboard by Capt. Perkins. The second day after the purchase, and the day before the injury, the claimant placed Albert E. Matthews, an engineer in the employ of the company, on board the tug to take charge of her, for the purpose of getting her into commission. To Matthews the libelant applied for a job as fireman. Matthews told him he would "just as soon have him as anybody, as long as he kept straight." The libelant was hired for no particular time, but understood that he was to keep his job as fireman after the tugboat should go into commission. Matthews and the libelant were the only persons on board the boat while she was being repaired, except certain day laborers who assisted in cleaning and painting. When the engineer went away on Sunday afternoon, he left Flaherty aboard to look after the fires. It does not appear that any agent of the claimant was informed by the libelant, or by any one else, of the condition of the ladder. On the day of the injury, late in the afternoon, or early in the evening, libelant came upon the wharf from the boat, with the use of this ladder, which he hauled up on the wharf. He then went over to Portland, and some time between 10 and 11 in the evening he returned to the wharf. He found the ladder near the capsill of the wharf, where he had left it, in a position where, as he says, he could see the whole of it. He picked it up, put it down on the upper house, on the waterway, which is about eight inches wide, and started to go down. He had only gone one rung when it let him down. He has no distinct memory of placing the broken end of the ladder on the boat, but infers that he did so, because, as he testifies, "when I got down one rung, she flopped over onto me." There is no substantial contradiction as to the facts which I have stated.

Upon the testimony in the case there can be no doubt but that the libelant was at fault. His fault is substantially admitted by his learned proctor, who contends that he was guilty merely of contributory negligence; that the initial fault was that of the claimant, in that it did not furnish to its servant a suitable instrument for his use; that the libelant did not intelligently and distinctly assume the risk of using the defective ladder; that he is not shown to have fully appreciated the dangers of using it; that such dangers were not fully explained to him, or brought clearly before him, although he was warned of the defect; and that at the time of the injury he did not have in mind the condition of the ladder, and so used it and was injured. The libelant invokes the authorities that, before a servant can be held to have assumed a risk, he must be shown to have understood and appreciated the nature of it. He further urges with great earnestness that he was a seaman; that the ladder was one of the furnishings of the ship; that his duty as a seaman made it incumbent upon him to follow the orders of the master, and to use such appliances as were given him; that a seaman cannot leave the ship, but

must obey orders, and use such things as are placed in his hands by the master. The learned proctor for the libelant presents these considerations with force and learning.

On a careful consideration of the case, I cannot sustain the libelant's contention. After the purchase of the tug by the claimant, the libelant was the only person left aboard. The testimony to which I have referred shows that he knew the condition of the ladder; that he acted upon such knowledge; that previous to the injury he used the ladder by putting the good end down. He says that he did not use the ladder a great deal; but his testimony shows that he was familiar with its customary use in going to and from the wharf, for he testifies that, when the ladder was put up for the purpose of going ashore, "it will stay that way all day." He came ashore with the ladder. He saw it just before he used it at the time of the injury. His learned proctor invokes the familiar cases which hold that complicated machinery must be fully explained to a servant, and that such servant cannot be held to have assumed the risk of its use, unless it is shown that he fully appreciates the dangers. But these cases have no application here. There can be nothing more easily understood than a short ladder. It is not a complicated machine. If its condition is once brought to the attention of the servant, there can be no need for further explanation about it. The consequences of the use of it, with one rail broken off at the end, must be apparent to any one after such defect is pointed out. The case shows, not only that the libelant knew of the defect of the ladder, but that, after the sale, he was the only man who did know of the ladder being aboard and of its defective condition. He did not show the ladder to the claimant's agents when they came aboard for examination. He did not point out its defect to Matthews, the engineer who had charge of the boat while she was lying at the wharf. The tug was not in commission. She was not fitted for sea duty, but was lying at the wharf for the purpose of repair, for the purpose of putting all its apparel and furniture, including this ladder, into condition for service at sea.

It is unnecessary to decide whether or not, for certain purposes, the libelant may be held to have been a "seaman," within the meaning of the statutes and of the general maritime law; but he was not a seaman at sea. He was assisting in the repair of the boat. An engineer had charge during the time of repairing, but with no such authority as a master would have. The language of his employment by the new owner was extremely vague. There was nothing to prevent him from leaving the employment. If the ship, or any of its tackle and apparel, did not suit him, he was at liberty to leave at any moment. The familiar law with respect to the duty of a seaman to obey the orders of the master has no application here; for the libelant was not at sea. He was under no captain. The case shows that his employment was not such as to make it incumbent upon him to remain upon the ship for a moment longer than he desired.

It will be remembered that the admiralty rule of dividing damages where both parties are at fault was first applied to collision cases only, and afterwards extended to all cases of maritime torts occasioned

by concurrent negligence. When this subject presented a new question, in The Max Morris (D. C.) 24 Fed. 861, 864, Judge Addison Brown said:

"The more equal distribution of justice, the dictates of humanity, the safety of life and limb, and the public good will, I think, be clearly best promoted by holding vessels liable to bear some part of the actual pecuniary loss, where their fault is clear, provided that the libelant's fault, though evident, is neither willful, nor gross, nor inexcusable, and where the other circumstances present a strong case for his relief. Such a rule will certainly not diminish the care of laborers for their own safety, while it will surely tend to quicken the attention of the owners and masters of vessels towards providing all needful means for the safety of life and limb."

In speaking for the Circuit Court (28 Fed. 881), affirming Judge Brown's decision, Judge Wallace pointed out that although, in cases of marine torts, admiralty courts are in the habit of proceeding upon enlarged principles of justice and equity, still this does not imply "that such courts do not proceed upon settled rules equally with courts of equity or of common law." The language of the decision shows that the court did not intend to ignore the recognized features of the law of negligence, nor to disregard the accepted doctrine of the assumption of risk. Such intention is not shown in the decisions of the higher federal courts. In the Dredge Case, 134 Fed. 161, 67 C. C. A. 67, 69 L. R. A. 293, the Circuit Court of Appeals in this Circuit refused to apply the doctrine of Davies v. Mann in a maritime case, but did not intimate that the principles pertaining to assumption of risk and other well-recognized principles of the law of negligence are to be overridden in a court of admiralty.

In The Saratoga, 87 Fed. 349, the District Court divided the damages on the ground that the servant's injury was due to the combined and concurrent negligence of himself and the ship. This decision was reversed by the Circuit Court of Appeals in 94 Fed. 221, 36 C. C. A. 208, where, in speaking for that court, Judge Lacombe held that the libelant had a complete knowledge of the hatches which were alleged to have been defective, and that he must be held to have taken the risk. The court says:

"With the knowledge of this condition of things the libelant must be held charged. Passengers, visitors, or workmen from shore, unaccustomed to the regulation of the ship's internal economy, who are invited by the owner, either expressly or by implication, to wander about in the vicinity of such hatches, may hold the owner responsible for results; but so far as the crew, and the regular gangs of workmen from shore, who are familiar with the location and regulation of the hatches, are concerned, their knowledge of the situation and their continuance at work are held to be conclusive evidence that, as to the particular danger of which they were thus advised, they took their risk. * * * The libelant must be held to a knowledge of the conditions under which the work was done, since it had been done in the same way repeatedly and usually during his employment."

In The Serapis, 49 Fed. 393, the District Court held it to be a case of concurrent faults, and divided the damages; but in 51 Fed. 92, 2 C. C. A. 102, the Circuit Court of Appeals reversed the District Court, and held that the owners of the steamship could not be held negligent for having on board the ship a winch which had been there for over six years in continual use, in perfect order, but requiring more care on

the part of the person who worked it than some modern machines. The case showed that the machine was well known to the employé, and that it was well known to him that it required more attention on his part than other machines fitted for similar use. The court held that the libelant assumed the risks of all accidents. In applying the principles of maritime law to the facts in the case the court said:

"This libelant's misfortune has our deepest sympathy, but to do injustice through sympathy for the injured is to do away with law, and make recovery for loss dependent on the tenderness, or want of it, in the feelings of the court."

In The Maharajah (D. C.) 40 Fed. 784, 785, Judge Brown held that:

"A workman employed to work a particular machine, which he fully understands, takes the risk of accidents that may happen to him while using it, so long as the machine is maintained in the same condition as by his contract he has the right to expect and to rely upon."

Judge Brown said:

"The libelant was a longshoreman, employed by the day or hour. He was hired to work this winch. No skill was necessary, only care. Whatever liability there was to accident from the hand's slipping was visible and plain. It was not a concealed or unsuspected danger, but one as well known to the workmen as to the employer."

In The Henry B. Fiske (D. C.) 141 Fed. 188, 191, a case where a defective patent rider broke, such rider forming part of the tackle, apparel, and furniture of a schooner, Judge Dodge held that, if no sufficient reason appears why the breaking of the rider should have been anticipated, such danger as lay in the possibility of its breaking was a risk assumed by the libelant, a seaman on the vessel, as incident to his employment.

In The Carl (D. C.) 18 Fed. 655, the libelant was employed to assist in unloading goods between decks. His work was forward of the fore hatch. While washing the main deck, thinking all the hatches were about to be closed, he turned suddenly, and, forgetting the open hatch near him, stepped into it and was injured. Judge Brown held that the proximate cause of the accident was the libelant's inattention and negligence, and said:

"This negligence was, therefore, not merely contributory, but it was the immediate and proximate cause of the accident. The covering of the hatch above was but the preliminary and indirect cause, not necessarily or naturally producing the subsequent fall of the libelant."

In the case at bar, after a careful study of the uncontradicted facts, and an application of the well-known principles of maritime law, I come to the conclusion that the fault was entirely upon the part of the libelant. He was not placed by his employer in a position of undisclosed danger. He was not dealing with complicated machinery. He knew whatever defect existed in the ladder, but did not disclose such defect to the purchasers of the tug. While he was the only one knowing the condition of the ladder, he made no effort to repair it; nor did he direct the attention of the engineer, with whom he was afterwards employed, to its condition. As in The Serapis, supra, if he had taken care, he could have used the appliance safely. He knew the ladder

better than any one else, and assumed the risks of its use. His negligence was the immediate and proximate cause of the injury.

The libel may be dismissed. Inasmuch as the learned proctor for the libelant believed that he had a remedy for at least half damages, I decree that the claimant recover no costs from the libelant.