## DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY v. KOSKE.

No. 219.   Argued January 17, 1929.—Decided February 18, 1929.

*Mr. Walter J. Larrabee,* with whom *Mr. Frederic B. Scott* was on the brief, for petitioner.

*Mr. I. Faerber Goldenhorn,* with whom *Mr. Saul Nemser* was on the brief, for respondent.

Mr. JUSTICE BUTLER delivered the opinion of the Court.

Respondent sued petitioner under the Federal Employers' Liability Act in the circuit court of Hudson County, New Jersey, to recover damages for injuries sustained by him while in the service of petitioner. At the close of the evidence, defendant moved the court to direct a verdict in

its favor on the grounds that the evidence was not suffi-cient to warrant a finding of negligence on the part of defendant and that it conclusively appeared that plaintiff assumed the risk of the accident and injury complained of. The motion was denied, there was a verdict for plain-tiff, and the judgment entered thereon was affirmed by the highest court of the State.

Plaintiff was employed in defendant's roundhouse and coal-chute yard at Hoboken. The complaint alleged that defendant negligently " permitted an open, uncovered and unlighted and dangerous hole to exist between certain parts of said tracks," that plaintiff was there employed at four o'clock in the morning of June 4, 1925, and " while alighting from an engine in the course of his said employ-ment fell into said opening," and was injured.

Plaintiff's work was to put sand into the boxes on engines and to turn switches for them. During eleven years he worked nights from nine o'clock in the evening until seven in the morning and for one year, about five years before the accident, he worked in the day time. He was familiar with the tracks and ground in the yard. Throughout the period of his employment, the yard was drained by a shallow open ditch or trench. This depres-sion varied in depth from eight to eleven inches and in width from eight to twenty-four inches. It passed between ties under the tracks and, at a place not far from the coal-chute, it extended a short distance longitudinally between the tracks. During all the time that plaintiff worked there the drain or ditch was in the same place and was maintained in the same condition as it was at the time of the accident.

The case was tried, the jury charged and the judgment given and affirmed upon the understanding that the place where plaintiff fell was a part of the above-mentioned longitudinal section of the drain. Nevertheless, plaintiff here suggests that it is not certain that the hole com-

plained of was a part of the trench. But, as it was in respect of the ditch or drain that defendant was found negligent and plaintiff was held not to have assumed the risk and as that only was considered by the lower courts, the judgment cannot be affirmed on the theory that plaintiff was not injured there but at another place.

Three or four days after the accident, plaintiff went to the yard to get his pay and then told the coal-chute foreman of the accident saying he "fell down in the ditch somewhere off an engine." He also indicated to the roundhouse foreman not the exact spot but the vicinity of the place where he claimed to have been injured. The part of the yard so pointed out includes the section of the drain here in question.

In his testimony plaintiff described the accident in substance as follows. He went upon an engine standing near the roundhouse and rode it to a point about 60 feet from the coal-chute, where it stopped near a switch he intended to turn. The engine step was between three and four feet above the general level of the ground between the tracks. He said he jumped from the engine and "just struck a certain hole"; that there was coal or stone in the hole; "there was something there very hard," that he immediately became unconscious and did not know what happened or who took him "out of that hole or how they took" him. He also said that he did not know about the hole before he jumped; that it was so dark that he could not see the hole; that he thought everything was level and did not expect the hole to be in that place. There is nothing to support a finding that there was then any hole or depression in the yard other than the open drain.

The Federal Employers Liability Act permits recovery upon the basis of negligence only. The carrier is not liable to its employees because of any defect or insufficiency in plant or equipment that is not attributable to negli-

gence. The burden was on plaintiff to adduce reasonable evidence to show a breach of duty owed by defendant to him in respect of the place where he was injured and that in whole or in part his injuries resulted proximately therefrom. And, except as provided in § 4 of the Act, the employee assumes the ordinary risks of his employment; and, when obvious or fully known and appreciated, he assumes the extraordinary risks and those due to negligence of his employer and fellow employees. *Seaboard Air Line* v. *Horton,* 233 U. S. 492, 501. *St. Louis, etc. Ry.* v. *Mills,* 271 U. S. 344. *Northern Ry. Co.* v. *Page,* 274 U. S. 65, 75.

The record contains no description of the place where plaintiff was injured other than that above referred to. Fault or negligence may not be found from the mere existence of the drain and the happening of the accident. The measure of duty owed by defendant to plaintiff was reasonable or ordinary care having regard to the circumstances. *Patton* v. *Texas and Pacific Railway Co.,* 179 U. S. 658, 664. There is no evidence that the open drain was not suitable or appropriate for the purpose for which it was maintained or that there was in use by defendant or other carriers any means for the drainage of railroad yards which involve less of danger to switchmen and others employed therein. Defendant was not bound to maintain its yard in the best or safest condition; it had much freedom in the selection of methods to drain its yard and in the choice of facilities and places for the use of its employees. Courts will not prescribe standards in respect of such matters or leave engineering questions such as are involved in the construction and maintenance of railroad yards and the drainage systems therein to the uncertain and varying judgment of iuries. *Toledo, St. L. & W. R. Co.* v. *Allen,* 276 U. S. 16ɔ, 170. The evidence is not sufficient to warrant a finding that defendant was guilty of any breach of duty owed to plaintiff in respect

of the method employed or the condition of the drain at the time and place in question. *Nelson* v. *Southern Ry. Co.,* 246 U. S. 253. *Missouri Pacific Railroad Co.* v. *Aeby,* 275 U. S. 426.

The court takes judicial notice of the fact that for some weeks immediately before the accident the sun rose and it was light for some time before plaintiff's quitting hour. *Montenes* v. *Metropolitan Street R. Co.,* 77 App. Div. 493. He worked in daylight for some time every morning during the spring and summer months, and during one year he worked days. There was nothing obscure or of recent origin about the place where he was injured. The conditions were constant and of long standing. The evidence requires a finding that he had long known the location of the drain and its condition at the place in question. The dangers attending jumping from engines in the vicinity of the drain, especially in the dark, were obvious. Plaintiff must be held to have fully understood and appreciated the risk.

It was the duty of the judge presiding at the trial, to direct the jury to return a verdict in favor of the defendant. *Butler* v. *Frazee,* 211 U. S. 459, 467.

*Judgment reversed.*