ABRAM SHORTWAY, PLAINTIFF-APPELLEE, v. ERIE RAIL-
ROAD COMPANY, A CORPORATION OF NEW JERSEY,
DEFENDANT-APPELLANT.

Submitted October 15, 1929—Decided December 30, 1929.

Before Justices PARKER, BLACK and BODINE.

For the defendant-appellant, *Hobart & Minard*.

For the plaintiff-appellee, *Edward F. Merrey*.

PER CURIAM.

The plaintiff was a trainman employed by the Erie Railroad
Company in its passenger service in interstate commerce.
The action was brought under the Federal Employers' Lia-
bility act, and resulted in a verdict in favor of the plaintiff
in the sum of $6,000. On this appeal two questions are
argued—(1) that negligence on the part of the defendant
was not proved, and (2) if it were the risk was assumed by
the plaintiff.

About five miles out of Jersey City, the railroad company
maintains train storage yards. Train crews report to the
Jersey City station and are transported to the storage yards
where they board their trains and back them into the Jersey
City station for loading.

The plaintiff reported at the Jersey City station on November 11th, 1927, at three-thirty o'clock in the afternoon. He was taken to the storage yard and boarded his train. In his crew was brakeman White, who was not familiar with the operation of air brakes. The plaintiff and White were on the rear end of the train when they were about a half mile from the Jersey City station. Plaintiff noticed that the train had passed an unlighted signal. He stopped his train and signaled the engineer to pull in the opposite direction so as to clear the signal. It was quite dark and the signal was unlighted and not visible from the point where plaintiff stood. He left the train and started to walk in the direction of the signal along some planking between the rails, using his lantern as best he could to light his way. This planking was on a trestle crossing Jersey avenue, Jersey City. The planking extended over the trestle, but when the plaintiff came to the end of the trestle he fell into a large excavation about six feet deep and suffered the injuries of which he complains. The excavation was in the railroad right of way and at the end of the planking. The plaintiff's testimony so accurately describes the occurrence that it will, in part, be quoted at some length: "And I stepped out to give the engineer a signal to pull ahead with the train, on account that you can't start if you are past the signal, you are blocking up another switch, so I got out and signalled the engineer to pull ahead, and he did. And as we stopped, why, we thought we heard the blade go down on this signal, but I wanted to be sure before I went on. I was going to go up there with my lamp to see how the switch was, whether the signal was down, whether the blade was down, or whether it wasn't. Q. Then you went over that, did you? A. Yes, but at the end of the trestle I stepped off into the excavation, and there was an excavation there between the tracks. Q. Could you see it? A. No, I couldn't see it. I had a lamp with me and the light was small, and on account of the condition you can't see right close to you with this lamp. It shows about four feet away from you. The light is such you can see as you walk along; you can't see directly where you step. Q. That was your

regular trainman's lantern that you had furnished by the railroad company? *A.* Yes. *Q.* All right. Now you came along and you spoke about a hole, excavation. Just describe what that was. *A.* At the end of this planking was a hole, an excavation left open, and that runs down from the signal about forty degrees. So this hole was about six feet deep right at this planking. *Q.* Well, now, just describe this excavation? Could you find out what the purpose of it was? *A.* It seemed to me as if these tracks had been raised since I had been there before. I had a run for five years and I never had occasion to come this way, never had occasion to go to the yard for a train in that five years' time. They raised all these tracks. They put a terminal building in there and they raised up those tracks to meet that terminal building, and this hole was left open and it hadn't been filled in between the tracks."

It is the contention of the railroad company that the case is ruled by *Delaware, Lackawanna and Western Railroad Co.* v. *Koske,* 279 *U. S.* 7. We think that this contention overlooks the difference in facts. In the Koske case, the plaintiff stepped into an open drain or ditch in the railroad yard. There is no evidence that this drain was not suitable and appropriate for the purposes for which it was intended, and obviously no court can dictate to railroads the way in which they shall meet their yard engineering problems. On the other hand, in the present case there is nothing to suggest that the excavation six feet deep at the end of the plank walk in a railroad yard has any suitable or appropriate purpose, or that any engineering problem is involved in leaving such an excavation at the end of a plank walk designed for trainmen.

In this case a question for the jury was presented and we see no error in their finding.

The proofs in this case further show that the employe did not know of this particular risk. He had not been in the yard since the excavation was made or the tracks were elevated, and there was nothing to warn him of the excavation at the end of his path. It can hardly be contended that such an excavation is one of the ordinary risks of railroading.

We do not believe that when the charge of the court is examined as a whole that it can seriously be contended that the jury were permitted to speculate as to what duty existed upon the part of the railroad. Certainly a pit at the end of a path designed for workmen to walk upon is a danger to employes not familiar with the locality towards dusk or after dark. It would seem absurd to say that such a pit made the pathway reasonably safe.

The rule will be discharged.