### HUNT et al. v. HOBBS, WALL & CO.
#### No. 6061.

Circuit Court of Appeals, Ninth Circuit.
July 7, 1930.

Rehearing Denied Aug. 26, 1930.

George Olshausen, of San Francisco, Cal., for appellants.

Lillick, Olson & Graham and Jones & Dall, all of San Francisco, Cal. (Joseph J. Geary and Allan E. Charles, both of San Francisco, Cal., of counsel), for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge.

An able seaman, August Hunt, was killed February 23, 1917, by falling from a beam

---

438

to the deck of the hold on board the steam schooner Mandalay, of 226 tons net register, owned by the libelee, while that vessel was undergoing repairs in a dry dock at the Moore Shipyards in San Francisco Bay. His daughters brought a suit against appellee, the owner, in the superior court of Alameda county, Cal., alleging negligence in the installation and maintenance of the beam from which decedent fell and that the death of their father resulted from that negligence, and claiming damages in the sum of $50,000. The vessel was worth $15,000, and this proceeding was instituted in admiralty to limit the owner's liability. The District Court held that there was no liability and entered its decree accordingly, from which this appeal is taken.

There is no substantial disagreement as to the facts. Two seamen only were aboard at the time of the accident, the decedent, Hunt, and George Mattson. They had been ordered forward to get two pine timbers from the forehold to be used as stanchions in making the repairs. They went forward, Mattson descended into the hold and bent a rope to one of these timbers, which was about the size of a railroad tie. He returned to the upper deck, and the two men hauled the timber up and placed it on deck, whereupon the decedent descended into the hold and made the rope fast to the other timber, near its middle. He then returned to the upper deck, and both men hoisted the timber until it was in an approximately horizontal position, with one end projecting under the deck upon which they stood. In order to free this end, the decedent jumped down on the beam in question, which crossed the hatchway athwartships within a few inches of the timber, and, stooping down, reached over with an S-shaped timber hook to free the timber. As he leaned forward and struck at the timber with the hook he missed it, lost his balance, and fell head foremost, nine feet, to the deck of the hold. This athwartships beam extended from side to side of the schooner as a necessary part of its structure. It supported its deck and amidship house and tied its sides together. It extended across the forward hatch at its after end; its after edge being about six inches forward of the after hatch coaming. The hatch was twenty feet long fore and aft and ten feet athwartships. The hatch coamings were about two feet high from the lower surface of the upper deck. No handhold was provided for persons on the beam, although, by reaching down between the beam in question and the one immediately aft, one could take hold of an iron tie rod. It is suggested that the decedent could have protected himself by taking hold of this tie rod or by holding onto the hatch coaming. The proctors have shown commendable industry and zeal in marshaling the authorities on the subject of assumption of risk, seaworthiness, negligence, etc., but, after all is said and done, the simple fact remains that this beam was not intended as a place to work, its situation was obvious, its dangers, such as they were, clearly manifest; the decedent was neither directed to use the beam nor did his duties necessarily require him to do so. If he had taken a half hitch of the bight of the rope around one end of the timber they were raising, or bent the rope nearer the end, it would have been entirely unnecessary to use the beam to free the timber. The use of an exposed beam to repair a ship, such as this, was unusual but not unprecedented. The fact that after it was installed it was used occasionally, or was usually used by the crew as a short cut across the hatch, has no bearing upon the accident, which was caused by the unusual position of the decedent and not by any structural defect of the beam. Such risk as was involved in the use of the beam by the decedent was unnecessary and upon well-established principles was assumed by him. See Delaware, L. & W. R. Co. v. Koske, 279 U. S. 7, 49 S. Ct. 202, 73 L. Ed. 578; Detroit Crude-Oil Co. v. Grable (C. C. A.) 94 F. 73; Panama Ry. Co. v. Johnson (C. C. A.) 289 F. 964; Zinnel v. U. S. Shipping Board (C. C. A.) 10 F.(2d) 47; States Steamship Co. v. Berglann, 41 F.(2d) 456 (C. C. A. 9th); The Scandinavia (D. C.) 156 F. 403; The Colusa (C. C. A.) 248 F. 21; The Seirstad (D. C.) 27 F.(2d) 982; Chelentis v. Luckenbach S. S. Co. 247 U. S. 372, 38 S. Ct. 501, 62 L. Ed. 1171.

Decree affirmed.