CLARKSON, J., dissenting.
The evidence tended to show that the deceased, E. R. Wolfe, was an experienced switchman for the defendant, having entered the switching service in 1917. On or about 6 December, 1924, the defendant was switching cars for the purpose of making up a freight train on its yards in South Rocky Mount. The defendant's shifting engine had shunted or kicked a string of two or three cars on one of the tracks, and the deceased was on the rear end of these cars putting on brakes. Before these cars were stopped the defendant shunted or kicked another string of cars upon the same track. The second string of cars so kicked in struck the first string upon which plaintiff's intestate was riding, knocking him off and killing him.
The only witness who saw the occurrence was a negro preacher named July. His narrative is substantially as follows: "I saw the accident. I saw, possibly, it was two or three cars, I disremember which, but Mr. Wolfe was on the rear end of the cars. The engine had shifted these cars on one of the tracks. . . . When the engine shifted them in it left the cars running, and the engine cut loose. Mr. Wolfe was up there putting on brakes, whensoever they shunt the cars in. When I last saw him other cars came in and struck the cars he was on before he got them finally stopped. The engine shoved these cars in or kicked them in, but the engine was cut loose from them before they stopped rolling. The last cars struck the one on which Mr. Wolfe was on and knocked him off. . . . Mr. Wolfe was on the cars that were first put in with his brake stick turning the brake wheel when the second cars were run on him. I did not hear any notice given to him of their approach. . . . If the engineer and conductor on the shifting train had been looking, there was nothing to keep them from seeing Mr. Wolfe. . . . The string of cars upon which Mr. Wolfe was trying to stop were still rolling when the second string of cars was kicked in upon the track. He had checked the speed of the first cars, but they had not fully stopped. That is done on the yards every day. That is *Page 615 
the way they make up a train. There was nothing unusual in what happened except that he fell off. That happens every day. The cars that were rolled into that track were to be coupled unto the cars he was on. They were part of the same train, made up in the same train, and put in there for the purpose of making up the train. When they came in behind the cars he was on they rolled up there and struck the car he was on. That happens dozens of times in making up trains. It is a common everyday thing. Nothing unusual about it. It happens that way usually down there."
The record contains this entry: "It was admitted by both sides that plaintiff's intestate was engaged in interstate commerce and was under the provisions of the Federal Employers' Liability Act."
At the conclusion of plaintiff's evidence the defendant moved for judgment of nonsuit, which motion was allowed by the court.
From the judgment so rendered the plaintiff appealed.
It having been admitted that plaintiff's intestate was engaged in interstate commerce at the time of his death, it necessarily follows that the liability of the defendant must be determined solely by the Federal Employers' Liability Act as construed and applied by the courts of the United States. The rules of liability declared by the Federal Courts of last resort, relating to injury sustained by brakemen and others while at work around and upon shifting trains and shunted cars, are discussed and applied in many cases, notably: C. M. and S. T. P. Ry. v. Coogan,271 U.S. 472; Gulf, Mobile and Northern R. R. Co. v. Wells, 275 U.S. 455;Toledo, St. Louis Western R. Co. v. Allen, 276 U.S. 165; Delaware L. W. R. Co. v. Koske, 279 U.S. 7; Chesapeake Ohio R. R. Co. v. Mihas, 50 Supreme Court Reporter, 42; Slocum v. Erie R. R. Co., 37 F.2d 42.
In the Toledo case, supra, a car checker was injured by a shunted car. In discussing the merits of the question the Supreme Court of the United States said: "The work of checking cars in a yard at night where switching is being done is necessarily attended by much danger. But fault or negligence may not be inferred from the mere existence of danger or from the fact that plaintiff was struck and injured by the moving car. . . . On the evidence it must be held that he knew how switching was done there; and, in the absence of proof that he was exposed to some unusual danger by reason of a departure from the practice generally followed, it cannot be held that defendant was in *Page 616 
duty bound to give him warning. . . . There is nothing to sustain a finding that plaintiff was in any danger other than such as was usually incident to his employment or that any member of the crew knew or had any reason to believe that he was oblivious of the situation. In the absence of knowledge on their part that he was in a place where he was liable to be struck and oblivious of that danger, they were not required to vary the switching practice customarily followed in that yard or to warn or to take other steps to protect him."
In the Mihas case, supra, the plaintiff was employed to care for switch lights and lamps along the right of way. In the line of his duty he attempted to climb over a coal car standing on a switch track. While doing so, a string of nine cars was forcibly propelled by means of a flying switch against the standing cars with such force that the plaintiff was knocked off and severely injured. The Court said: "There is nothing in the record to show that employees engaged in the switching operation knew or had reason to believe that Mihas was in any position of danger. In the absence of such knowledge or ground for belief they were not required to warn him of the impending switching operation or to take other steps to protect him."
The plaintiff in the Slocum case, supra, was a switchman and was knocked off a car during a switching operation and killed. Recovery was permitted in the State court upon the theory that he was knocked off by the impact of shunted cars. The Circuit Court of Appeals for the Second Circuit, in denying the right of plaintiff to recover, declared: "There must be proof of some unusual jar, and this was altogether lacking in the present case."
Applying the principles of law to the facts, it is manifest that the switching operation involved in the case at bar was done in the usual and customary manner and according to the usual practice established in the yards of defendant at Rocky Mount. The plaintiff's intestate, as a switchman of twelve years experience, must have been thoroughly cognizant of the usual and customary practice in such operations and aware of all the usual hazards incident to his employment. The evidence discloses, without contradiction, that the switching was done in the usual way, according to the customary method, and that there was no departure from the usual practice in making up the train. Moreover, there was no evidence of any unusual jerking or unexpected movement of cars, nor is there evidence that the employees of defendant knew or had reason to believe that plaintiff's intestate was oblivious to the hazards and dangers which surrounded him.
Under such circumstances the Federal Law denies recovery, and the judgment of nonsuit was properly entered.
Affirmed. *Page 617