## THE NEW ZEALAND.

### Petition of ATLANTIC LIGHTERAGE CORPORATION.
### No. A–11381.

District Court, E. D. New York.
March 17, 1931.

Alexander, Ash & Jones, of New York City (Lawson R. Jones, Edward Ash, and Max Taylor, all of New York City, of counsel), for petitioner.

Harry S. Austin, of New York City, for claimant.

BYERS, District Judge.

In this limitation proceeding, it becomes necessary to determine whether the sole claimant, Charles A. Berg, being in the employ of the petitioner, was injured by reason of his own lack of care, or because the lighter upon which he was working was unseaworthy for the task in which it was engaged, to the knowledge of the petitioner; and, if the foregoing be resolved in favor of the claimant, the nature and extent of his injuries, and the consequent award to be made to him.

The facts are found to be as follows:

On January 8, 1929, Berg was in charge of the petitioner's lighter New Zealand, lying alongside, bow inshore, at Pier 38, Brooklyn; the starboard side of the lighter being alongside the pier.

Fifteen hundred bales of jute, weighing four hundred pounds each, were being laden from the pier, and all but about one hundred and fifty were in place, when the accident happened.

The loading platform of the lighter is about seventy-three feet in length, and the beam of the vessel is about thirty-three feet. The mast is stepped aft of the loading platform, being separated therefrom by about forty inches. Aft of the mast is the deck housing, containing the hoisting gears and power, and a cabin. There is a window on the starboard side in front of the housing, through which the man at the engine saw the bales of jute from the time they were hand-trucked from the interior of the pier to the string-piece, from which they were hoisted and brought aboard the lighter.

Three men were on the pier, doing the trucking, and each in turn placed the hooks attached to the fall into the bale that he had delivered to the string-piece of the pier. Berg was doing the stowing unassisted, and Housman was running the engine.

The loading platform was roughly divided into five blocks, fore and aft, and each was finished before the next was begun, and the bales were laid from port to starboard. Each block, when finished, contained seven tiers of bales, laid six abreast in seven rows, making about 300 bales to a block.

The first four blocks had been completed, as had three tiers of the fifth; two or three bales in the fourth tier had been placed, but the port corner aft had not been filled. Salin, one of the longshoremen, fixed the hooks, and watched the bale swing toward Berg, who was standing on the port side, near the mast. The pick-up was "hasty," and, as the tide was low, the deck of the lighter was about ten feet below the pier. The bale started about five feet ahead of the mast, and, as it neared Berg, the swing was in an arc, toward the aft port corner of the stow; Berg tried to ward off the bale, to prevent its striking him, but was unable to withstand the momentum which the bale had gained, and was pushed back and forced to step down to the deck, a matter of about four or five feet. The impact of his left heel was so severe as to cause a compressed fracture of the eleventh dorsal vertebra, causing a partial permanent disability.

The swing of the bale was not normally athwartship, because of the following condition of the gear: The mast is held in place, and enabled to take the ultimate strain of the loading, by six stays, two on each side, and two astern. The stays are engaged in chain-plates, bolted into the hull.

Customarily the port and starboard stays are made fast in the forward chain-plates, which are twenty feet forward of the stern, and five feet forward of the mast. The aft chain-plates are eleven and one-half feet forward of the stern, and hence three and one-half feet aft of the mast.

The boom which rests, in the gooseneck on the mast, and from the tip of which the fall runs, is controlled in its fore and aft play, as well as laterally, by guys, also called vangs, which likewise engage the chain-plates.

In August, 1928, the forward starboard chain-plate was completely broken, and rendered incapable of receiving the starboard stays, or the vangs; therefore, they had to be attached to the aft chain-plate, three and one-half feet astern of the mast.

This condition was formally made known to the operating head, and directing vice president of the petitioner, as he testified. He stated that he did not consider the matter sufficiently important to cause repairs to be made. The lighter spent one and a half days in the repair yard in October of that year, over two months before the accident, but no repair to the forward starboard chain-plate was authorized. Such was made, however, in February, 1929, about one month after the injury to Berg.

The placing of bales in such a stowage as was here conducted involves, as to the first block, the extension of the boom, so that the fall will plumb conveniently to enable the bales to be placed as described. The completion of each block required the raising of the boom for accommodation to space nearer the mast; in the fifth block the boom was close to the mast. It was "topped" by Berg just prior to taking the draft which caused the injury, as he was working then in an area which so required. The vang controlling the fore and aft movement of the boom (which was necessarily swinging in a restricted zone), being made fast to the aft chain-plate, was unequal to the task of controlling the tendency of the boom to swing back, as well as across the lighter, and it was this tendency which Berg was unable to repel by his hands. Thus he was exposed to a hazard which would not have been present if the vang could have been made fast in the forward chain-plate.

When the vice president of the petitioner assumed the responsibility of deciding that the faulty condition which was called to his

attention by Berg, both in writing and verbally, was not sufficiently important to require attention, he did that which in fairness should be visited upon the company for which he was acting, unless some rule of law operates to the contrary.

The contentions offered by the petitioner will now be examined, as a basis for the conclusions of law upon which the decision herein will rest.

■ First, it is urged that the doctrine of assumption of risk deprives the claimant of all right to recover, and the following cases are cited:

Stewart v. Brune (C. C. A.) 179 F. 350. Plaintiff operated a derrick, and applied excessive power to accomplish a purpose entrusted to him. The power was in his control alone. The court decided that plaintiff must have appreciated the danger of applying power beyond the capacity of the derrick and therefore assumed the risk.

Southern Ry. v. Hermans (C. C. A.) 44 F.(2d) 366. Reversal and new trial ordered, in a death case, the jury having found a verdict for plaintiff. The decedent, a deck hand on a tug, was caught between it and a barge, in changing a line. The Fourth Circuit Court of Appeals says that the jury should have been instructed that, even though the captain of the tug were negligent, the plaintiff could not recover if the decedent clearly understood the risks attendant upon such negligence and voluntarily assumed them.

The Scandinavia (D. C.) 156 F. 403. Decedent, fireman on a tug, knew that a landing ladder with a broken end was unsafe with that end down, but not if it was up. He placed the broken end down, when boarding the tug from a wharf. Held that decedent assumed the risk of what he did.

New York, etc., R. Co. v. McDougall (C. C. A.) 15 F.(2d) 283. Plaintiff was a brakeman on a freight train, operating in Cleveland, where there are numerous overhead bridges. He stood up on a freight car to give a signal, and was struck by one, and injured. A judgment recovered by him was reversed, because he was bound to know of constantly recurring danger from such an act as he performed.

Norfolk & Western Ry. Co. v. Collingsworth (C. C. A.) 32 F.(2d) 561., A switch oiler on a railroad was struck by a "cut" of freight cars being drilled by a yard engine; the cars had no lookout on the leading car, nor was there a lantern thereon. The court set aside plaintiff's verdict, because there was no proof of negligence, and incidentally remarked that plaintiff assumed obvious risks of employment.

Delaware, etc., R. R. Co. v. Koske, 279 U. S. 7, 49 S. Ct. 202, 73 L. Ed. 578. Plaintiff, employed in defendant's roundhouse, apparently was riding on an engine step, to a coal chute, where he intended to turn a switch; he jumped from the engine into a ditch, and it was so "dark he couldn't see." The Supreme Court reversed plaintiff's recovery under the Federal Employers' Liability Act (45 USCA §§ 51–59), because he did not prove breach of any duty owed to him by defendant in respect of the place where he was injured. And he assumed the ordinary risks, and also extraordinary risks of his employment if fully known and appreciated.

These cases fairly present the petitioner's contention that Berg assumed the risk or hazard of the broken chain-plate, and the attachment of the starboard vang to the after chain-plate, in conducting the operation in which he was engaged.

It is thought that the rule of assumption of risk, as laid down, does not meet the situation disclosed by the evidence here. The swing of the bale aft as well as athwartship was not so inevitably to be anticipated as to constitute an ordinary risk of the employment, because it did not occur when the boom was topped up to meet the successive requirements of the first four blocks of this stow; nor for the early three tiers of the fifth block. Only when the boom was topped to within a foot or two of the mast, just prior to the receipt on board the lighter of the bale that did the damage, was there a tendency on the part of the boom to swing the bale aft. To say that this should have been anticipated, and therefore avoided, is the teaching of hindsight.

■ Having in mind that the doctrine of assumption of risk may be said to rest in contract (See McAdoo v. Anzellotti [C. C. A.] 271 F. 268), it would seem that one against whom the rule is to be invoked should be shown to have, or to be chargeable with, something approaching knowledge of what he agrees or engages to assume. To such purport are the cases cited by the petitioner, but its argument is not persuasive that Berg must be held to have been able to see and appreciate the likelihood that the rigging of the starboard vang to the aft chain-plate would cause this or any other bale to swing

aft as well as toward the offshore side of the lighter.

. The second contention is that, even under the Jones Law (41 Stat. 1007, § 33 [46 USCA § 688]), the claimant could not recover, if he assumed the risk in question. It may be so conceded.

■ The third contention is that the negligence was that of Berg, and not of the petitioner. It has been seen that Berg did all that an employee could reasonably do, to procure the repair of the broken chain-plate. Unless it was negligence on his part to remain in the employ of the lighterage company at all after Mr. Briody had decided, without so informing Berg, that this was so trivial a matter as not to require attention, ,or unless such failure of the directing head of the employing company, which was persisted in, is to be imputed to the employee by some process of reasoning not now disclosed, it becomes difficult to follow this argument.

Petitioner reasons that, because Salin, the longshoreman, testified that the boom struck the mast, or the stay, in swinging one or more bales prior to the one that did the damage, Berg is chargeable with negligence in continuing the operation under these conditions.

The court heard the witnesses, and has reflected upon the testimony, and the opportunity possessed by Salin to observe prior occurrences.

It is unable to conclude that the testimony reveals negligence on Berg's part; clearly the opposite is true of the conduct of the petitioner, in so important a matter as the proper anchorage for stays and vangs, upon which the lighterage operations depended.

Again, it is urged that the starboard stay and vang would have required shifting to the aft chain-plate, even if the broken chain-plate had been in good repair. There is no evidence to sustain this contention, which rests in speculation only, and is contrary to what the prior experience of Berg on this lighter makes clear, when the broken chain-plate was functioning.

Further, it is urged that Berg has admitted in writing that he merely stepped backwards, and, having failed to add that he was caused to do that by the impact of the bale against his outstretched hands, his credibility is impaired. Reliance principally is placed upon a statement procured by one Adams, in the employ of Federal Indemnity Company, carrying insurance for the petitioner. Adams testified that the language of the statement was his, not Berg's, and that it was procured while the latter was lying on his back in the hospital to which he was taken on the day of the accident, and that this was within a week or two afterward.

Berg testified that he did not read the statement before he signed it. The document has received the consideration to which it is thought to be entitled.

■ It is represented that the injury to claimant is not permanent, but the medical testimony of the doctor representing the petitioner is to the contrary effect. Berg is wearing a steel spinal brace or corset, is lame and uses a cane, and cannot do heavy work.

Before the injury, he earned on an average of $140 per month. He still has earning capacity, but manifestly it is substantially impaired.

■ Finally, petitioner urges that, in any event, it is entitled to limitation, because the broken chain-plate is not shown to have been the sole proximate cause of the injury.

If what has been set forth fairly portrays the evidence, it results that claimant has shown that the sole proximate cause of his injury was the failure of the starboard vang to hold the boom to a lateral sway on the port side of the lighter, and that this was due to the placing of that vang in the aft chain-plate, which would not have been necessary if the broken one had been capable of functioning.

The case is close and opinions might well differ as to what the evidence discloses, but, in the belief that it preponderates in claimant's favor, on all the issues discussed, he will be awarded $12,500 damages, with interest from January 8, 1929, and a decree may be settled on notice, denying the limitation.

If the foregoing be deemed an insufficient compliance with Admiralty Rule 46½ (28 USCA § 723), findings and conclusions may be settled on notice.