## THE MANGORE.

### BRITTINGHAM v. ORE S. S. CO.

District Court, D. Maryland.
March 4, 1932.

Stanley E. Hartman, of Baltimore, Md., for libelant.

Lord & Whip, of Baltimore, Md., for respondent.

WILLIAM C. COLEMAN, District Judge.

This is a libel in personam for damages brought under section 33 of the Merchant Marine Act of 1920 (46 USCA § 688), libelant claiming that the respondent, the Ore Steamship Company, is liable for injuries received as first assistant engineer on the Steamship Mangore while lying in the port of Baltimore, caused by a small piece of metal entering and blinding his left eye, which occurred while he was in the act of removing a set screw with a chisel which he had been ordered to do by the chief engineer of the vessel. The respondent denies liability on two grounds: First, that no negligence is to be imputed to it or the chief engineer of its vessel pursuant to whose supervision, if not direct order, libelant was making the repairs in question at the time he was injured; and, second, because libelant assumed the risk incident to such repair work.

Briefly stated, the material facts are that, upon arrival at Baltimore, the chief engineer having discovered that it was necessary to remove and to replace the nut on the valve stem of the low pressure engine, instructed the libelant, his assistant, to whom he was accustomed to delegate such work, how to remove the set screw which held this nut in place. This set screw being casehardened, the operation was sought to be accomplished through the process of releasing it by first cutting out, by means of a hammer and chisel, the collar of softer metal which held it in place. In aid of the work, the chief engineer held a flash-light, libelant held the chisel, and two oilers alternated in striking the chisel with the hammer, in the course of which a piece of metal flew off into libelant's left eye. The operation was somewhat handicapped by escaping steam from the engine which made the use of goggles impractical, although they were available to the libelant. The chief engineer, though nearer to the chisel, shielded his face with his hand.

Plaintiff relies upon section 33 of the Merchant Marine Act of 1920 (46 USCA § 688), which is as follows: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply. * * *"

The present form of action—a libel in personam in admiralty to recover damages for personal injuries due to negligence—was not open to seamen prior to the above enactment. Formerly, he could recover damages for personal injuries only if they were caused by the unseaworthiness of the vessel, otherwise he was entitled only to maintenance and cure, and to his wages throughout the remainder of the voyage. But now, as the Supreme Court said in Pacific Company v. Peterson, 278 U. S. 130, at 134, 135, 139, 49 S. Ct. 75, 76, 73 L. Ed. 220:

"By section 33 of the Merchant Marine Act, as heretofore construed, the prior maritime law of the United States was modified by giving to seamen injured through negligence the rights given to railway employees by the Employers' Liability Act of 1908 and its amendments (45 USCA §§ 51–59) and permitting these new substantive rights to be asserted and enforced in actions in personam against the employers in federal or state courts administering common-law remedies, with the right of trial by jury, or in suits in admiralty in courts administering maritime remedies, without trial by jury. Panama R. R. Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748; Engel v. Davenport, 271 U. S. 33, 46 S. Ct. 410, 70 L. Ed. 813; Panama R. R. v. Vasquez, 271 U. S. 557, 46 S. Ct. 596, 70 L. Ed. 1085; Baltimore S. S. Co. v. Phillips, 274 U. S. 316, 47 S. Ct. 600, 71 L. Ed. 1069. * * *

"And we conclude that the alternative measures of relief accorded him, between which he is given an election, are merely the right under the new rule to recover compensatory damages for injuries caused by negligence and the right under the old rules to re-

cover indemnity for injuries occasioned by unseaworthiness. * * * "

■ It will be seen that the act carries by reference the provisions of the Federal Employers' Liability Act relating to negligence and assumption of risk, when an action at law is resorted to. Contributory negligence is expressly made not a bar to recovery, but a fact in the diminution of damages. Section 3 of the Federal Employers' Liability Act of April 22, 1908 (45 USCA § 53). As to assumption of risk, the statute negatives such assumption only in cases where the violation by the employer carrier of a safety device statute has contributed to the injury or death of the employee. Section 4, Federal Employers' Liability Act April 22, 1908 (45 USCA § 54). In interpreting this question of the assumption of risk under the Federal Employers' Liability Act, the Supreme Court has laid down the following rule in Delaware, etc., R. R. v. Koske, 279 U. S. 7, at pages 10 and 11, 49 S. Ct. 202, 203, 73 L. Ed. 578: "The Federal Employers' Liability Act permits recovery upon the basis of negligence only. The carrier is not liable to its employees because of any defect or insufficiency in plant or equipment that is not attributable to negligence. The burden was on plaintiff to adduce reasonable evidence to show a breach of duty owed by defendant to him in respect of the place where he was injured, and that in whole or in part his injuries resulted proximately therefrom. And, except as provided in section 4 of the act, the employee assumes the ordinary risks of his employment; and, when obvious or fully known and appreciated, he assumes the extraordinary risks and those due to negligence of his employer and fellow employees. Seaboard Air Line v. Horton, 233 U. S. 492, 501, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1 [Ann. Cas. 1915B, 475]; St. Louis, etc., Ry. v. Mills, 271 U. S. 344, 46 S. Ct. 520, 70 L. Ed. 979; Northern Ry. Co. v. Page, 274 U. S. 65, 75, 47 S. Ct. 491, 71 L. Ed. 929."

What is the effect, if any, of all this upon defendant's defense of assumption of risk when, as here, the suit is in admiralty? According to the Admiralty Law prior to the enactment of section 33 of the Merchant Marine Act 1920, it was universally accepted that seamen—wards of admiralty—were in a preferred position with respect to assumption of risk. Their complete subjection to orders; the penalties, punishments, and forfeitures involved should orders be disobeyed; their inability to abandon their employment with the same freedom that land employees might abandon theirs—all these things brought about a different and less severe rule respecting seamen. See Lafourche Packet Co. v. Henderson, 94 F. 871 (C. C. A. 5th), and cases cited therein; The Colusa, 248 F. 21 (C. C. A. 9th); Cricket S. S. Co. v. Parry (C. C. A.) 263 F. 523.

■ Thus, contrary to what would seem to be a more accurate literal interpretation of the proviso in section 33 of the Merchant Marine Act incorporating by reference the provisions of the Federal Employers' Liability Act, the rule with respect to what risks seamen assume, still remains relaxed. Certainly all the appellate and other well-considered decisions lead to this conclusion. See Grimberg v. Admiral Oriental S. S. Line (D. C.) 300 F. 619; U. S. Shipping Board Emergency Fleet Corporation v. O'Shea, 55 App. D. C. 300, 5 F. (2d) 123; Coast S. S. Co. v. Brady (C. C. A.) 8 F.(2d) 16; States S. S. Co. v. Berglann (C. C. A.) 41 F.(2d) 456; Id., 282 U. S. 868, 51 S. Ct. 75, 75 L. Ed. 767; Hunt v. Hobbs, Wall & Co. (C. C. A.) 42 F.(2d) 437.

As was said in the Grimberg Case, supra, at page 621 of 300 F.:

"* * * It cannot be that Congress intended to make applicable to seamen the entire doctrine of assumption of risk, as the same has been developed under the law of railway carriage. This necessarily results from the difference in the terms of the two employments. The servant or employee on shore is free to quit at will his employment, if there appear to him dangers in it; this the seaman cannot do.

"The seaman, for desertion, forfeits not only the wages he has earned, but the clothes and effects he leaves on board. For neglect of duty he is subject to forfeiture of part of his wages. For willful disobedience to lawful command he is not only liable to forfeiture of part of his wages, but to be placed in irons, as well; for continued willful disobedience to lawful command, he is not only subject to penalties and punishment similar in kind, but to be put on bread and water, with full rations every fifth day. Section 8380, Comp. Stat. [46 USCA § 701]. The seaman's neglect of duty or refusal to do a lawful act, under certain circumstances, subjects him to imprisonment. Section 8383, Comp. Stat. [46 USCA § 704]. Not only under the law, by refusing to do the work required of him, does he incur the risk of forfeiture and punishment, but during the voyage he is physically unable to leave the ship."

Similarly, as was said in the Berglann Case, supra, at page 457 of 41 F.(2d): "Appellant contends that the risks assumed by plaintiff are to be measured by the rule recently declared by the Supreme Court in Delaware, L. & W. R. Co. v. Koske, 279 U. S. 7, 49 S. Ct. 202, 204, 73 L. Ed. 578, as to railroad employees, namely, that the employee assumes, 'when obvious or fully known and appreciated, * * * the extraordinary risks and those due to negligence of his employer and fellow employees.' However, that portion of section 33 of the Merchant Marine Act of 1920 (46 USCA § 688), which provides, 'in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable,' does not require the definition of assumption of risk by a seaman in the same terms used with reference to railway employees. The doctrine of assumption of risk has long been applied to the cases of seamen; its application has been made with reference to the peculiar nature of the seaman's employment, his subjection to orders, and inability to abandon his employment during a voyage. There is nothing in the section above quoted intimating that any change is to be made in this regard. Panama R. Co. v. Johnson (C. C. A.) 289 F. 964."

Although in most of the reported cases, this precise question appears to have arisen through actions at law rather than suits in admiralty, change in the form of action does not alter the principle of law that must be applied, but, on the contrary, serves to confirm the necessity for adherence to the long established rule on this question, when the proceeding is in admiralty. See Buzynski v. Luckenbach S. S. Co., 277 U. S. 226, 48 S. Ct. 440, 72 L. Ed. 860.

■ Summarized, the rule enunciated in these cases, and the one which we feel should be followed, is that the risk of the injury is not assumed unless such risk is so dangerous that no man of ordinary prudence would have done what he did. Thus such decisions as C. & O. Ry. Co. v. Kuhn, 284 U. S. 44, 52 S. Ct. 45, 76 L. Ed. 157, have no application to the present case.

■■ Applying this admiralty rule to the facts in the present case, there is no evidence that the libelant acted otherwise than as any reasonable person would, under the circumstances, have acted. Assuming that the testimony discloses not an express command, but merely a tacit acquiescence, on the part of his superior officer to do the re-pair work in the particular manner, virtually the entire evidence is to the effect that the method adopted was the most practical and the customary one. It is true that no custom will justify an unreasonable practice. But it is equally true that custom, if not a negligent one, may often justify a given course of conduct. Texas & Pac. R. R. Co. v. Behymer, 189 U. S. 468, 23 S. Ct. 622, 47 L. Ed. 905.

Not only did the libelant and his superior officer admit that the cutting process was the only practical one under the circumstances, but all of the numerous additional witnesses, among them expert repairmen totally dissociated with either libelant or respondent, including those testifying on behalf of the libelant himself, stated this to be true. In answer to the claim that the blowtorch process might have been adopted successfully, their reply was that such was not only an uncommon practice, but was impractical because of the probability of molten metal dropping down into the engine mechanism.

■ Therefore libelant cannot be said to have assumed the risk. Nevertheless he still cannot recover unless it clearly appears that the work in which he was engaged was fraught with negligence on the part of his superiors. From what has just been said with respect to the reasonableness of the method adopted, it follows that no negligence is to be imputed to the respondent, even assuming that libelant was virtually under compulsion to do what he did, unless there were present some additional circumstance from which negligence must be implied.

In support of the argument of negligence, the failure of the respondent to require the use of goggles is stressed by libelant, as is also the fact that the work was done in the presence of escaping steam. The force of the first point depends largely upon the weight to be given to the second. There is no credible evidence that it was unreasonable to require the work to be done forthwith, without waiting until there was a total absence of steam in the engine room. This being so, it is idle to say that goggles should have been used because they would have fogged, and thus the work would have been rendered more, not less, dangerous, unless it can be shown that the use of goggles was per se reasonably essential to the safety of those engaged in work of this character. But there is no testimony in the case which would justify such conclusion, and the absence of such testimony must be

142

treated as indicating that the danger is not so great as claimed. Independently of such testimony, the very character of the operation as conducted impels the conclusion that the hazard was not nearly as great, or as foreseeable, as contended, although the injury was of a serious and regrettable nature. To hold otherwise would be tantamount to an unwarranted extension of an employer's liability on the theory of negligence, so as to embrace the ordinary hazards incident to the simplest forms of manual labor. All such hazards may well justify compulsory insurance, regardless of fault on the employer's part, but as yet it is not provided for in a case of this kind in admiralty.

The libel must therefore be dismissed.