**HOLM v. CITIES SERVICE TRANSP. CO.**
No. 409.

Circuit Court of Appeals, Second Circuit.
July 18, 1932.

722

Hatch & Wolfe, of New York City (Carver W. Wolfe, of New York City, of counsel), for appellant.

Simone N. Gazan, of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

Though somewhat greasy decks were necessarily concomitant to loading, this did not do away with the duty of the defendant to use whatever care was required to prevent excessive accumulations of oil in places where they would be dangerous to a person rightfully using the deck. That this defendant was guilty of negligence in permitting the pool of oil, in which the plaintiff slipped, to gather and remain where it was, must now be taken for granted. To this extent a jury question was presented. Sebald Brewing Co. v. Tompkins (C. C. A.) 221 F. 895. And we will consider what else is in the case upon the assumption that the defendant's negligence has been established. Furthermore, the plaintiff was acting within the scope of his employment in returning to his room from the place to which he had to go for a drink of cold water. States S. S. Co. v. Berglann (C. C. A.) 41 F.(2d) 456, 457.

The plaintiff was off duty at the time he was injured. After he had gone to the poop deck, he was free to return to his room over the flying bridge as he had come or by the route he chose. He was not acting under orders. He knew the hose connections had been leaking; he knew they would continue to leak while the ship was being loaded; and he knew the loading was still going on. He knew the well deck over which he started to return was greasy, and he knew there were leaking connections near his path. In a word, he had actual knowledge that he would find the well deck slippery. He did not know that there was a pool of oil in his path, but he did know that pools had formed there and might form again until the loading stopped,

whether the first mate had had the decks cleaned as he promised when he relieved Holm in the middle of the afternoon or not. Knowing all this, the plaintiff did not see fit to go back over the flying bridge which, though somewhat tracked with oil, must be taken to have been safe for walking, but elected to return by way of a deck he knew was greasy and would be slippery. If the defense of assumption of risk is available under the Jones Act, it seems very plain that it has been made out. The plaintiff knew what to expect on the deck he used for his own convenience in taking the shorter way back to his room, and found there only what was to be expected. The plaintiff freely chose a way to return which he knew was slippery instead of going back as he had come. Hardie v. New York Harbor Dry Dock Corporation (C. C. A.) 9 F.(2d) 545.

The Jones Act, § 33 (46 USCA § 688) provides that "all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply." It has brought new rules into the admiralty law which a seaman may elect to invoke. Panama R. R. Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748. In section 4 of the Federal Employers' Liability Act (45 USCA § 54) the defense of assumption of risk is taken away only where the violation by a common carrier of a statute enacted for the safety of employees contributed to the injury or death of an employee. Otherwise it is an available defense. Seaboard Air Line R. R. Co. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Jacobs v. Southern R. R. Co., 241 U. S. 229, 36 S. Ct. 588, 60 L. Ed. 970; D., L. & W. R. R. Co. v. Koske, 279 U. S. 7, 49 S. Ct. 202, 73 L. Ed. 578; Biernacki v. Penn R. R. Co., 45 F.(2d) 677 (C. C. A. 2). As there was here no violation of such a statute as is mentioned in the Federal Employers' Liability Act, the question whether assumption of risk is ever a defense under the Jones Act is squarely presented.

Where a seaman is injured when acting under orders, he does not assume the risk. Panama R. R. Co. v. Johnson (C. C. A.) 289 F. 964; Masjulis v. Shipping Board, 31 F. (2d) 284 (C. C. A. 2). The defense of assumption of risk is not available when a seaman so injured sues to recover because his duty to obey the order of a superior is so compelling that a rule of law based on the maxim "volenti non fit injuria" cannot be applied. Where the conduct of the injured

seaman, however, is induced only by his own free will, and he acts to his injury at a time and place when he is free to choose between doing what is safe and what is known to him to be dangerous, he is obviously under no more compulsion than is an employee on land. In States S. S. Co. v. Berglann, supra, it was recognized that a seaman assumed all ordinary risks of his employment but not those created by the negligence of the persons in charge of the ship, since he could not quit the ship or control the action of his superiors. This was, however, but another application of the principle that a man does not assume a risk forced upon him. In Lynott v. Great Lakes Transit Corporation, 202 App. Div. 613, 195 N. Y. S. 13, it was held that assumption of risk was not a defense under the Jones Act. This result was reached by reasoning that the defense is not a part of the general law of maritime torts and that the Jones Act works no change in that respect, since the defense is not created by the Federal Employers' Liability Act (45 USCA §§ 51–59), but only permitted under common-law principles except to the extent forbidden by section 4 of that statute. Reliance was put upon Lafourche Packet Co. v. Henderson (C. C. A.) 94 F. 871, to show that assumption of risk was not a part of the general maritime law. The treatment of assumption of risk in the Lynott Case, is somewhat too broad, since it leaves out of account the element of coercion which is the basis of the modification of the common-law rule as found in maritime law. Lafourche Packet Co. v. Henderson, supra, makes this feature controlling. It was the principle on which the decision turned. Henderson was working under orders. That a seaman does not assume the risk of injury caused by the unseaworthiness of the ship or defective appliances even though known to him, Cricket S. S. Co. v. Parry (C. C. A.) 263 F. 523, is not decisive in this case. Of course, seamen on duty must use what is furnished for their use because they cannot quit, and shipowners cannot relieve themselves of liability to their seamen for injuries caused by the unseaworthiness of their ships or defective appliances which they require seamen with no real choice in the matter to use. But this doctrine is not to be pressed to the point where a seaman not acting under orders is relieved of the risks incident to his employment which are known and obvious to him. To this extent it has long been a part of the maritime law that seamen do assume the obvious or known risks of their employment. The Iroquis, 194 U. S. 240, 24 S. Ct. 640, 48 L. Ed.

955; States S. S. Co. v. Berglann (C. C. A.) 41 F.(2d) 456; The Scandinavia (D. C.) 156 F. 403; Gaderson v. Texas Co. (C. C. A.) 3 F.(2d) 140. So a seaman off duty who has gone for a drink of water and decides to return to his room over a deck he knows is slippery and may have oil collected in pools upon it, when he knows there is a safe though somewhat longer way for him to return, must be held to have assumed the known and obvious risks incident to his voluntary choice. The judgment should have been only for so much as the plaintiff was entitled to recover in his action for maintenance and cure. This disposition of the case makes it unnecessary to deal with the exceptions in respect to the medical testimony introduced to show the extent of the plaintiff's injuries.

Judgment reversed.