GERTRUDE JOHNSON v. C. A. SMITH LUMBER COMPANY.[1]

November 16, 1906.

Nos. 14,800—(10).

**Master and Servant—Negligence.**

Defendant's custom was to draw by horse power a tram car, loaded with slabs in the basement of its mill, through an aperture in the wall up a varying grade and for a considerable distance to a point near the level, and there to block the car, and, when another car had been similarly hauled to that point, to chain the two cars together, and to draw them hence, in "order to equalize the uphill haul." In this case two cars escaped, ran back to the basement, and killed plaintiff's intestate at work there. In an action to recover damages, it is *held*:

(1) That the operation of these instrumentalities under these circumstances was not of that simple and safe character in which, as a matter of law, the master, in the exercise of due care to provide a safe place for his servants' work, is not bound to prescribe its method, instruct servants therein, and see to the enforcement thereof.

(2) That in view of the requests to charge, made and given, and in the absence of a specific request to submit to the jury the existence of such a duty on the master's part, as a matter of fact, the defendant was in no position to complain of the charge as to the master's duty actually given by the trial court.

(3) That the evidence, showing the recent employment of the young teamster, from whom the cars escaped, the absence of instructions given

[1]Reported in 109 N. W. 810.

him by the master as to the method of blocking the cars, and the system actually in vogue, justified the jury's finding of negligence on the master's part.

**Verdict.**

The jury returned a verdict of $5,000. The deceased, a sober and industrious man, in good health, fifty four years of age, had provided well for his family surviving him. The damages were not excessive.

Action in the district court for Hennepin county by plaintiff, as administratrix of the estate of Eric Peterson, deceased, to recover $5000 for the death of decedent. The case was tried before Holt, J., and a jury, which returned a verdict in favor of the plaintiff for the sum demanded. From an order, denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*M. H. Boutelle* and *A. M. Higgins,* for appellant.

*Cohen, Atwater & Shaw* and *Ludvig Arctander,* for respondent.

JAGGARD, J.

The defendant and appellant owned and operated a large modern sawmill and lumber yard, including some forty miles of tramway tracks. Tram cars were drawn by horses over these tracks to carry, inter alia, slabs and edgings to different parts of the premises. The track involved in this suit emerged from the basement of the mill through an aperture in the wall, and ran some three hundred feet under the sorting platform of the mill, and thence with another turn on an upgrade, one hundred fifty feet, to a switch. The incline varied with the irregularities of the ground's contour. The grade from the basement to the switch was approximately one foot rise to every thirty six feet of track. For many years the trams were hauled singly through the basement over the track to a point fifty feet south of the switch. There they were held in place by placing a trig or block beneath the rear wheel. When two loaded cars had been brought to this point, they were chained together, and then hauled in a single load over the switch to the main track, so as to average the work and to "equalize the uphill haul." On August 22, 1905, two loaded tram cars standing on the track near the switch broke away, and ran back over the track into the basement, struck plaintiff's intestate, and killed

him. The court refused to direct a verdict for defendant. The jury returned a verdict of $5,000. This appeal was taken from the order of the court denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

1. The charges of negligence set forth in the complaint resolve themselves into two, namely: (1) that the method of operating cars was negligent; and (2) that the defendant negligently failed to instruct the driver of the car, recently employed, to block the second car. The defendant urges with great earnestness that there was no evidence sufficient to justify a finding of negligence; that the system of running the cars, as ordinarily conducted, was practicable, feasible, and safe; that the employer was not responsible for the conduct of his servants in the actual operation of the details of that system; and that the negligence in this case was that of a fellow servant, for which it was not responsible.

It is clear that there are occupations which are in fact so complex, and in their nature so dangerous, that the master, pursuant to his absolute duty of exercising reasonable care in providing a safe place for the servant, is bound to promulgate rules for the conduct of the work, to instruct employees with respect thereto, and, by inspection or otherwise, to secure their enforcement. This principle would obviously apply, for example, to the manufacture of explosives or of chemicals and to railroading. In such cases, courts hold, as a matter of law, that the duty exists. At the other extreme, there are occupations, like agricultural pursuits, so simple and safe that the master is not bound to direct how the work shall be done, to instruct the employees as to the details of their labors, or to see that the work is done in a particular manner. If a servant is injured by the carelessness of another servant, in such an occupation, the doctrine of fellow servant applies, and the master is not responsible for consequent injuries. Between these two classes of cases there may be instances in which it is proper for the jury to determine, as a matter of fact, just as juries are called upon to adjudge other questions of negligence, whether the exercise of due care required the master to formulate rules, instruct his servants, and enforce actual obedience to such rules.

It might very well be that under many conditions the operation of tram cars drawn by horses over a track, as a matter of law, be classed

as simple and safe. The instrumentalities, in themselves, are not necessarily much different from an ordinary horse and wagon. But there may be conditions which impose upon the master the duties applicable to dangerous operations. In the present case heavy cars emerged from the basement, and went a considerable distance out of the sight of the people working there. In the absence of negligence, the cars did not return over the track to the basement. In case the cars should escape from their blocking, they would run back into the basement at dangerous speed, and the men there at work would have no opportunity of seeing them return because of obstacles to vision, or of hearing them because of the noises of the mill. The men would thus be exposed to an imminent peril without warning, and under circumstances wherein the enforcement of simple practice would make injury impossible. It was entirely within the discretion of the owner whether the device adopted would be a brake on or blocks under the wheels of both the cars, but the situation involved the duty of exercising reasonable care in providing a proper method of preventing the escape of the cars, and of seeing that whatever system he employed availed. The doctrine of fellow servant does not exonerate a defendant under such circumstances, not because the teamster and the deceased were in fact engaged in different departments of work, but because of the imposition upon the master of an absolute duty to exercise reasonable care in providing a safe place, which he could not delegate to another.

The defendant insists that at most it was a matter of fact for the jury to determine whether or not this duty of prescribing methods, instructing employees, and enforcing the system provided existed, and that the court erred in not submitting that issue to the jury. An examination of the record has satisfied us that this question is not reached in this case. The defense asked the court to give many elaborate instructions, drawn with great care. The court gave a number of these which involved the positions now taken by the defense. Other parts of the charge also referred to the method of work. The defendant asked no specific instruction on this point. Taken as a whole, it is in no position to complain of the charge actually given.

In this view of the law, and of the question here in issue, we are of the opinion that the testimony justified the court in submitting de-

fendant's negligence to the jury, and in sustaining its verdict on this point. The teamster, nineteen years of age, who had been at work a short time in the mill, testified, inter alia, that.he had never been instructed or told by any one from the time he commenced work, or while he was at work, prior to the accident, that when the second car was brought up to the first car standing on the upgrade, then the second car should be blocked. He also swore that never, during the whole time that he was working there, up to the time of the accident, had he seen a teamster blocking a second car when he was making up the first car standing on the upgrade. There was also evidence that the general system of blocking used in the yard for some years before the employment of this teamster was sometimes to block beyond the first and second cars, and sometimes to block the first car only. The duty of the master to exercise reasonable care in the protection of his servants by prescribing some system of operation, by instruction and by inspection, having been found, it follows that this conduct tended to show the failure to perform that duty as a matter of fact.

2. The damages were not excessive. The deceased, a sober, industrious man, in good health, and fifty four years of age, left surviving him a widow and two children, a boy and girl, twins, aged sixteen years. He had been a kind husband and father, and had provided well for his family. While damages in cases of death by wrongful act are to be calculated upon reasonable expectancy of pecuniary benefit, it has been specifically settled that "the value of the services of the head of a family in a pecuniary sense cannot be limited to the amount of his daily wages earned for their support. His constant daily services, attention, and care in their behalf, in the relation which he sustained to them, may be considered as well, and the jury must judge of the circumstances of each case." Bolinger v. St. Paul & Duluth R. Co., 36 Minn. 418, 31 N. W. 856, 1 Am. St. 680. And see Shaber v. St. Paul, M. & M. Ry. Co., 28 Minn. 103, 9 N. W. 575; 8 Am. & Eng. Enc. (2d Ed.) 915; 13·Cyc. 371. Accordingly, defendant's calculation of the gross maximum earning capacity of the deceased, based upon his expectancy of life according to the mortuary tables, was not conclusive upon the jury.

Order affirmed.

ELLIOTT, J., dissents.