# Jones et al. v. Chambers' Administrator.

(Decided April 27, 1937.)

R. L. POPE, C. B. UPTON and TYE, SILER, GILLIS & SILER for appellants.

J. B. JOHNSON and H. H. OWENS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Bailey Chambers' administrator brought this action against William Jones and Mart Parks, doing business under the firm name of Jones & Parks, and the Kentucky Utilities Company, to recover damages for his death. The case was dismissed without prejudice as to the Kentucky Utilities Company. A trial before a jury resulted in a verdict and judgment against Jones and Parks for $2,500. They appeal.

The facts are: The Kentucky Utilities Company contracted with Jones and Parks to clear a right of way for its transmission lines. Jones and Parks, and particularly Jones, supervised the work. Chambers was one of their employees, and an experienced timber man. Ike Rapier was another employee. On a sloping hillside there was a dead tree about 14 inches at the

stump. The top of the tree had broken off about 24 feet from the ground and had fallen east. The top was not completely severed at the break, but remained attached to the body of the tree. The other end of the top rested on the ground a short distance east of the base of the tree. The broken top was about 38 feet long. According to Rapier, Jones told him to notch the tree so it would fall uphill, or to the south. He and Chambers began sawing the tree from the north side. After sawing awhile the tree began to pinch the saw. Jones then drove a wedge into the saw cut and loosened the saw. Chambers and Rapier then sawed further into the tree and the tree again settled so as to pinch the saw. After the saw was pinched a second time Jones took charge of the work. According to Rapier, Jones said, "Step back," and he would wedge it. According to Jones, he said, "Look out, boys, I'm going to knock it down." Orville Jones' account of what took place is: "They took the saw out and then told them to get back out of the way. * * * He told them he would knock the tree down." Drexall McKeehan gives the following account of what took place: "Bill told them to be careful now, he was going to knock the tree down, and everybody got out of the way, and he put another wedge in it and wedged the tree down." Rapier says that Jones hit the wedge with a maul, and after the second or third lick the tree started to fall. Jones "hollered," "Look out," and the witness sprang down the hill. When Jones told Chambers and Rapier to get back, that he would knock the tree down, Rapier stepped back four or five feet on the upper side of the tree and Chambers went back about 10 feet on the upper side of the tree. Orville Jones also went to the south or uphill side of the tree. After telling the men to get back, Jones waited for half a minute, according to Rapier's recollection, and from two to three minutes, according to others, before he proceeded to knock the tree down. It was during that interval that Chambers walked from the base of the tree to a place about 10 feet up the hill and towards the south. He carried the saw with him. Rapier threw Chambers the handle, which had been removed. Chambers put the handle back on the saw. When Jones was ready to knock the tree down he again "hollered," "Look out." The tree fell towards the southwest. During the fall the upper part of the tree broke from the stump and fell in al-

most a western direction. When the tree started to fall Chambers suddenly left the place where he was standing about 10 feet above and south of the tree and ran down hill under the broken top of the tree. He was severely injured and died of pneumonia.

The only question we need consider is, whether appellants were entitled to a peremptory instruction. As they were subject to the Workmen's Compensation Act (Ky. Stats. sec. 4880 et seq.), but did not elect to operate under its provisions, the defenses of assumed risk and contributory negligence were not available. Section 4960, Kentucky Statutes. However, it was necessary to show that Chambers' death was caused by some actionable negligence on the part of appellants. Horse Creek Mining Company v. Frazier's Adm'x, 224 Ky. 211, 5 S. W. (2d) 1064; West Kentucky Coal Co. v. Shoulders' Adm'r, 234 Ky. 427, 28 S. W. (2d) 479. Recovery was asked on the following grounds: (1) Failure to furnish Chambers a safe place to work; (2) failure to adopt a safe method of work; (3) failure to warn.

In the very nature of things it is not possible for an employer to provide a safe place for an employee to fell a tree. The danger is one created by the servant in the progress of the work. Every stroke of the ax or saw increases the danger until it culminates in the fall of the tree. It is therefore the rule that the safe place doctrine does not apply. Mocabee v. Harbison-Walker Refractories Co., 194 Ky. 723, 240 S. W. 380. It follows that there was no liability because of appellants' failure to furnish Chambers a safe place to work.

It is equally certain that liability cannot be predicated on appellants' failure to provide a safe method of work. True, there was evidence that it was more dangerous to fell the tree with the top attached to the trunk than if the trunk had been detached, but it must not be overlooked that Chambers and his companion, Rapier, were not engaged in felling the tree at the time of the accident. Jones himself had taken charge of the work, and had told Chambers and Rapier to step aside. In the circumstances, it is not perceived how the method of work was the proximate cause of the accident.

But it is insisted that the case was properly sub-

mitted to the jury on the failure of Jones to warn Chambers. In this connection attention is called to the fact that the tree was originally notched in the direction it was expected to fall, and to Jones' own admission that when he took charge he changed the direction of the fall and did not tell the men that he had done so. It may be that if Jones, after telling the men to stand back and that he would take charge of the work, had seen Chambers in a place of danger it would have been his duty to give him an additional warning, but that is not the case. Not only was the direction of the intended fall apparent to all present, but Chambers had gone to a place of safety where, if he had remained, he would not have been injured. Certainly, it was not incumbent on Jones to anticipate that Chambers would change his position and make it necessary to give an additional warning. On the contrary, the original warning to step back, or to look out, that he would knock the tree down, was clear notice to all the men, including Chambers, that they should seek a place of safety, and was sufficient for all purposes. Not only was the warning sufficient, but Chambers and the other men were given ample time to seek a place of safety. It is apparent, therefore, that appellants performed their whole duty, and that Chambers' act in leaving a place of safety and rushing under the falling tree was the sole cause of the injuries resulting in his death.

It follows that the motion for a peremptory instruction should have been sustained.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.