## Phillips v. Keltner's Adm'r.

Jan. 10, 1939.

KELLY J. FRANCIS, L. L. WALKER and GORDON MONTGOM-ERY for appellant.

ROLLIN HURT and J. C. CARTER, JR., for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

James E. Keltner's administrator brought this action against J. M. Phillips to recover damages for Keltner's death alleged to have been caused by the negligence of the defendant, his employer, in failing to furnish him a safe place to work. A trial before a jury resulted in a verdict and judgment against Phillips for $2,000 and he appeals.

In the summer of 1936, appellant was engaged in the business of molding concrete bricks near the town of Columbia in Adair County. He employed ten or twelve men, including the decedent, James E. Keltner, who at that time was 19 years of age. Keltner was injured August 26, 1936, and died as a result of the injuries October 24, 1936. Appellant was eligible to operate under the provisions of the Workmen's Compensation Act, Kentucky Statutes, sec. 4880 et seq. He did not elect to do so, and, consequently, was deprived of the defenses of assumed risk and contributory negligence. Keltner had been working for appellant for two or three weeks before the accident, and on the day he

was injured was engaged in transporting crushed limestone from a pile of finely crushed stone to the molding machine nearby. Joe Collins, a fellow employee, was assisting him in the work. Their tools and equipment consisted of a wheelbarrow and shovels. One would shovel the loose crushed stone into the wheelbarrow, and the other would deliver the wheelbarrow loads to the hopper of the molding machine. They alternated in using the shovel and operating the wheelbarrow. The pile of crushed stone was about 180 feet long, 90 feet wide, and 15 feet deep at one end and sloped gradually to the ground at the other end. The stone dust, or screenings, had solidified to a depth of 6 or 8 inches, due to the action of the elements and the driving of trucks over the pile, and it was necessary to remove this hard crust before the loose crushed stone was shoveled into the wheelbarrow. The workmen engaged in shoveling and transporting the crushed stone from the pile to the molding machine were not instructed to work at any particular point in the pile of stone or in any particular manner, but were directed merely to obtain the loose stone and transport it to the molding machine. The workmen obtained the stone at a point and in a manner most convenient to them. On the day the accident occurred, Keltner and his fellow employee, Collins, had excavated a ditch, or trench, a short distance into the pile of stone. At the time the accident occurred, the trench extended into the pile a distance of about 12 feet. It was 5 or 6 feet wide, and one wall of the trench was 7 or 8 feet high at its highest point and the opposite wall was 2 or 3 feet high. The trench had been started before Keltner and Collins began working on the day of the accident, but extended only 3 or 4 feet into the pile and was only 2 or 3 feet deep. When Keltner was injured he was sitting down or, as some of the witnesses expressed it, "was hunkered on his heels" in the trench eating a piece of watermelon. While he was in this posture, loose stone slid from the higher wall into the trench pinning him against the other wall of the trench and covering him up to his chin. Collins was standing in the trench near Keltner, and the loose stone covered his feet and legs up to his knees, but he was not injured. Keltner received internal injuries, and he was taken to a hospital where he died about two months later.

Appellant insists that the trial court erred in overruling his motion for a peremptory instruction to find

for him. Other grounds are relied upon for a reversal of the judgment, but, since we have concluded that appellant's motion for a peremptory instruction should have been sustained, we deem it unnecessary to discuss them.

Although the defenses of assumed risk and contributory negligence were not available to appellant, since he had not elected to operate under the provisions of the Workmen's Compensation Act, yet it was necessary to show that he was guilty of some actionable negligence before a recovery could be had for Keltner's death. Jones v. Chambers' Adm'r, 269 Ky. 98, 106 S. W. (2d) 72; Helton v. Gunn Coal Mining Company, 258 Ky. 168, 79 S. W. (2d) 695. The deceased was using simple tools, and the place where he was working was safe when he began work on the morning of the accident. If it became dangerous later, its dangerous condition was created by him in the necessary progress of the work in which he was engaged and not by appellant's failure to exercise ordinary care to furnish him with a safe place in which to work. The danger was not latent and concealed, and, hence, beyond the knowledge of the deceased, but was obvious to a person of ordinary intelligence. Ordinarily, under such circumstances, the safe place doctrine has no application. Yeary's Adm'r v. Hignite Coal Company, 267 Ky. 265, 102 S. W. (2d) 19. The deceased's own act and not any breach of duty owing to him by appellant was the proximate cause of his injury. As was said in Steely v. Great Atlantic & Pacific Tea Company, 256 Ky. 586, 76 S. W. (2d) 900, 901:

> "If appellant voluntarily selected an unsafe way in which to do his work on this occasion when there was a safe way in which to do it and his selection of the unsafe way was the proximate cause of his injury, the master was not liable."

But it is insisted by appellee that due to the youth and inexperience of the deceased it was the duty of appellant to warn him of the danger, and that the evidence on the question as to whether or not he was warned was sufficient to authorize the submission of the case to the jury. There are two answers to this argument. First, there is no evidence that the deceased did not possess the intelligence of the average young man of his age. He had been working for appellant for two or three

weeks. It is stated in appellee's brief that the deceased had not shoveled the loose stone prior to the day he was injured, but his own witnesses stated that he had been using the shovel and wheelbarrow previously, though at times he had alternated with the workmen at the molding machine. The work of shoveling the loose stone into the wheelbarrow and rolling the wheelbarrow to the molding machine and back to the pile of stone was extremely simple. The danger of slides occurring when the trench was cut into the pile of loose stone was obvious to any person of ordinary intelligence, though only 19 years of age. In passing it may be noted that if the deceased had not stepped aside from his work and sat down in the trench to eat a slice of watermelon, but had remained in a standing position, he would not have been seriously injured.

The second answer to appellee's argument is that the evidence shows satisfactorily the deceased was warned of the danger by appellant's foreman, Carter McKinney, who testified as follows:

"Q. Had you directed them where to get this dust? A. Yes.

"Q. Where did you tell them to get the dust? A. Not to dig where it might fall in on them.

"Q. The morning in which the accident occurred out there, Carter, was any trench dug in this pile of dust? A. Little place, not very deep.

"Q. About how deep that morning when they went to work? A. Something like 18 inches.

"Q. At the time of the accident, how deep was it? A. I judge something like 3½ or 4 feet.

"Q. Who had dug that ditch that day? A. Joe Collins and Keltner was hauling dust to the machine.

"Q. Anybody else work in that ditch that day but them? A. No.

"Q. Did you at any time that day warn Keltner about digging that ditch any deeper? A. Yes.

"Q. Tell just what you said? A. I walked out there about ten o'clock. What made me go out there, some one said they bought two watermelons. Kelt-

ner was running a wheelbarrow, said for me to come out and get a piece of melon. I went out there, I told the boys, 'Don't get around there it might fall on you,' Collins laid his elbows on it and raised his weight on it, said 'It will not fall.' I said, 'Get away from it,' I went back to the machine and about that time the bank went down.

"Q. How long before it fell had you warned them? Immediately? A. Three or four minutes.

"Q. You warned them to stay out? A. Yes.

"Q. What was Keltner doing at that time? A. Eating watermelon.

"Q. Standing or sitting down? A. Sitting down.

"Q. On the ground? A. On the bottom of the ditch.

"Q. On the bottom of the ditch? A. Yes.

"Q. Where was Collins? A. He was about 10 feet from where they loaded wheelbarrow.

"Q. Standing up? A. Yes.

"Q. How much dust fell on him? A. Up to his knees.

"Q. If Keltner had been standing up, would this dust have covered him about the same as Collins? A. A little above the knees.

"Q. If you recall, Carter, about how many times did you warn Keltner and Collins? About going in the ditch that day? A. I could not say, I warned them all to be careful around there about the ditch.

"Q. About how many times did you warn Keltner and Collins about digging under there? A. Two times.

"Q. The last time about 3 or 4 minutes before the accident? A. Yes.

"Q. About the time Collins put his arms on the bank? A. Yes.

"Q. How long had Collins been working in the dust with the wheelbarrow? A. A little longer than the Keltner boy, maybe a week or two longer.

"Q. How long had Keltner been using the

wheelbarrow, taking dust to the machines? A. All time he was there.

"Q. About how long? A. About three weeks."

Joe Collins' deposition was taken by the appellee, and on direct examination, he admitted that he had been warned by Mr. McKinney at least twice during the morning about going into the trench he and Keltner had dug in the pile of stone. He did not know whether Keltner had been warned by McKinney, but stated that on one occasion when McKinney warned him Keltner was engaged in operating the wheelbarrow. He was very indefinite as to just where Keltner was at the time, but, at most, his testimony does not contradict McKinney's positive statement that Keltner was warned. He merely stated, in substance, that he did not know whether Keltner was warned.

A careful consideration of the record convinces us that the plaintiff failed to prove any negligence on the part of the defendant. It follows that the motion for a peremptory instruction should have been sustained.

The judgment is reversed, for further proceedings consistent herewith.