## McGIVERN v. NORTHERN PAC. RY. CO.

No. 12331.

Circuit Court of Appeals, Eighth Circuit.

Dec. 26, 1942.

William H. DeParcq, of Minneapolis, Minn., for appellant.

Frederic D. McCarthy, of St. Paul, Minn. (L. B. daPonte, of St. Paul, Minn., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment in favor of appellee in an action brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages for the death of Ray P. McGivern, a switchman, who received injuries resulting in his subsequent death while in the employ of appellee in its switch yards at Staples, Minnesota. It will be convenient to refer to the parties as they were designated in the lower court.

Plaintiff is the special administratrix of the estate of Ray P. McGivern, deceased, while defendant is a railway company engaged in interstate commerce with yards at Staples, Minnesota. McGivern, plaintiff's intestate, at the time of receiving his fatal injuries was employed by defendant as a switchman in its yards at Staples, Minnesota. These yards comprise 26 tracks which extend in a general easterly and westerly direction. The main line tracks were located north of the yards. The yard tracks were numbered from the north to the south. At the easterly and westerly ends, respectively, of the yards lead tracks connect with the yard tracks by various switches. The depot and round house were located at the easterly end of the yards, about a mile from where the accident occurred. The yard office was about four blocks westerly from the depot and at the extreme west end of the yards there was a hump shanty. At about 11:30 P.M. on November 22, 1940, the switch crew, consisting of McGivern as switch foreman, and Martin and Jaeger as switchmen, began work. When a crew goes on duty it generally obtains the switch engine at the roundhouse. On this occasion the engine crew consisted of Fitzgerald, engineer, and Schroeder as fireman. McGivern was an experienced switchman having worked for defendant for about 20 years. The foreman receives somewhat higher wages than the other members of the switch crew. He stays with the engine most of the time, performs the same duties as the other members of the crew but in addition has the switch list marked to show where every car is to go, which he studies as he can. On this night the crew was busy up to the time of the accident, which occurred at 4:10 A.M. It had snowed the afternoon and early part of the night of November 22, and when the crew went on duty there were five or six inches of wet, sticky snow covering the yards. Just when it ceased snowing is not very clear from the evidence, there being some evidence that it was snowing up to the time when the men went on duty and continued until 2 A.M. We think the exact time of cessation not material. There was testimony that when the crew got the engine there was snow on all the footboards. There are two of these footboards at either end of the switch engine, each being 3 feet long, 1 foot wide and 1½ inches thick. During the progress of the switching process this freshly fallen soft snow was tracked on to the footboards by the feet of the members of the crew by their repeatedly stepping into the snow and then back on to the footboards. At the time of the accident there were ridges and bumps of ice and packed snow varying from 1 to 4 inches in thickness, formed by the switchmen on the right front footboard. This footboard was on the engineer's side of the engine and was used more than the others. Jaeger removed this snow and ice from the footboard between 1:30 and 2:00 A.M., but these ridges and bumps of packed snow and ice again accumulated

after that. McGivern was on the right front footboard when the accident occurred. When the switch engine was going east he stepped on to track 11 to couple on to and pull out a cut of about 34 cars. Jaeger and Martin, the other switchmen, were either in or near the hump shanty. When last seen before the accident McGivern was standing near the outer edge of the right front footboard with his left arm around the grab iron holding the switch list in his right hand, looking at it by the light of his lantern. His lantern was on the step or pilot where it was found after the accident. Just before the accident he gave the engineer a back up signal with his lantern. While the switch engine was moving east on track 11 it met and passed an outbound freight train, #605, on track 13. When the engine was backing west on track 11 at a speed of from 3 to 5 miles per hour, the engineer and fireman heard McGivern "holler". The engineer stopped the engine within a distance of 15 or 20 feet. McGivern was found lying between tracks 11 and 12. Marks on the snow indicated that he had been dragged 16 or 17 car lengths. He said he had hung on to a rod. He was taken to a hospital and died on the operating table from secondary shock.

Defendant moved for a directed verdict at the close of all the testimony, which motion was denied, and the court submitted the case to the jury on three grounds of alleged negligence on the part of the defendant: (1) failure to provide a reasonably safe place in which to work by allowing ridges and hummocks of ice to accumulate on the footboards; (2) failure to furnish proper equipment and material to remove snow and ice from the footboards; (3) failure to adopt any rule or custom and practice requiring removal of accumulation of snow and ice from the footboards.

The jury returned a verdict in favor of plaintiff for $6,825.00. Defendant then moved for judgment notwithstanding the verdict upon the grounds urged in support of its motion for a directed verdict. This motion was granted, the verdict and judgment in favor of plaintiff were set aside, and judgment entered for defendant.

 On appeal plaintiff contends that the court erred in granting defendant's motion for judgment notwithstanding the verdict in that the evidence showed that a cause of action for recovery on the above enumerated grounds of alleged negligence had been established. There is a preliminary contention by the plaintiff to the effect that the scope of review is limited because of certain procedural defects, it being urged that there was no motion for a new trial, and that defendant has by reason of its failure to except to the instructions, waived its right to question the law as therein declared. But the defendant is not appealing nor otherwise assailing the judgment. It simply asserts that the judgment appealed from is correct and ought not to be disturbed. The burden is on the plaintiff as appellant to show that the judgment as entered was based on prejudicial error. If the judgment is correct as entered then it ought to be affirmed regardless of the reasons or grounds which may have been given by the lower court for its entry. The motion for judgment, notwithstanding verdict, should not be granted unless the party against whom it is made has failed to make a case and a verdict in his favor should have been set aside. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147. Likewise, where a motion for a directed verdict has been interposed the question is whether there is any substantial evidence to support a verdict. In reviewing an order granting such a motion the appellate court must accept as true the evidence in favor of the party against whom it was granted and give him the benefit of all favorable inferences that may reasonably be drawn therefrom. If the evidence so considered is such that reasonable men might reach different conclusions, the case is one for the jury. Champlin Refining Co. v. Walker, 8 Cir., 113 F.2d 844. The Federal Employers' Liability Act abolished certain defenses so far as common carriers engaged in Interstate Commerce are concerned, which were recognized at common law, in favor of an employer when sued for personal injuries received in the course of employment by an employee. Thus it abolished the defense embodied in the fellow servant rule; the defense of contributory negligence and the defense of assumption of risk. Minneapolis, St. P. & S. S. M. Co. v. Rock, 279 U.S. 410, 49 S.Ct. 363, 73 L.Ed. 766; Moore v. Chesapeake & O. R. Co., 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755. A right of recovery, however, must be predicated upon negligence, and in the absence of such negligence recovery cannot be had. Northwestern P. R. Co. v. Bobo, 290 U.S. 499, 54 S.Ct. 263, 78 L.Ed. 462; Baltimore & O. R. Co. v. Berry, 286 U.S. 272, 52 S.Ct. 510, 76 L.Ed. 1098; Delaware,

L. & W. R. Co. v. Koske, 279 U.S. 7, 49 S.Ct. 202, 73 L.Ed. 578; Seaboard Air Line R. Co. v. Horton, 233 U.S. 492, 34 S.Ct. 635, 58 L.Ed. 1062, L.R.A.1915C, 1, Ann.Cas.1915B, 475; Chesapeake & O. R. Co. v. Stapelton, 279 U.S. 587, 49 S.Ct. 442, 73 L.Ed. 861.

 The common law rules for determining negligence on the part of an employer towards his employee are controlling on the question as to what constitutes negligence within the meaning of the Federal Employers' Liability Act, unless by the terms of the Act common law rules are abrogated. We are not here concerned with any act containing such abrogation or qualification. The rule applicable to all duties arising between the employer and the employee is the requirement to exercise reasonable or ordinary care in view of all the circumstances. Missouri Pac. R. Co. v. Aeby, 275 U.S. 426, 48 S.Ct. 177, 72 L.Ed. 351; Toledo, St. L. & W. R. Co. v. Allen, 276 U.S. 165, 48 S.Ct. 215, 72 L.Ed. 513. Generally speaking it may be said that the defense available in this class of action is that the employer was free from negligence proximately causing the injury. Having in mind these general principles we turn to a consideration of plaintiff's contentions. It is first urged that defendant was negligent in that it failed to furnish McGivern with a safe place in which to work. It is the duty of the employer to exercise reasonable care to the end that the employee be furnished with a reasonably safe place in which to work and reasonably safe tools and appliances. The employer is not, however, the insurer of the safety of his employee, and the test is whether reasonable or ordinary care has been exercised by the employer in that regard. Baltimore & O. S. W. R. Co. v. Carroll, 280 U.S. 491, 50 S.Ct. 182, 74 L.Ed. 566. The steps on this switch engine were, when the crew began to use them, free of snow. The accumulation of snow and ice during the progress of the work was a natural and normal consequence due to the recently fallen snow in the yards. There were no inherent imperfections in these steps rendering them less fit for the use for which they were intended. It cannot be said that the situation did not present dangers but danger in a particular phase of an employment does not necessarily imply negligence. As said by the Supreme Court in Missouri Pac. R. Co. v. Aeby, supra [275 U.S. 426, 48

S.Ct. 179, 72 L.Ed. 351], "no employment is free from danger". The defect to form the basis for a cause of action must be one which implies negligence on the part of the employer, or those for whose acts he is answerable. The condition of these footboards was continually changing because of the snow being carried on to them by the workmen and packed down. Once during the night the workmen cleaned the steps off. Snow and ice are due to climatic conditions incident to railway employment in wintertime in northern Minnesota, and it has been held by the Supreme Court of Minnesota that a railway company is not liable to its employees for injuries resulting from climatic conditions such as snow and ice. Gibson v. Iowa Central Ry. Co., 115 Minn. 147, 131 N.W. 1057; Slater v. Chicago, St. P., M. & O. Ry. Co., 146 Minn. 390, 178 N.W. 813. The duty of providing a reasonably safe place in which to work and reasonably safe appliances with which to work while a continuing one does not obligate the employer to keep the place of work safe at every moment where such safety may depend on the due performances of work by the servant and his fellow workmen. Kreigh v. Westinghouse C., K. & Co., 214 U.S. 249, 29 S.Ct. 619, 53 L.Ed. 984. In fact the rule is held not to be applicable where the workmen in the progress of their work render the place unsafe. Torgerson v. Minneapolis, St. P. & S. M. Ry. Co., 49 N.D. 1096, 194 N.W. 741; Cartwright v. Atchison, T. & S. F. Ry. Co., 8 Cir., 228 F. 872. Temporary conditions created by employees using or failing to use appliances furnished by the employer are not defects for which the employer may be held responsible in damages. Wood v. Davis, 5 Cir., 290 F. 1; Stone v. Bennett, 194 Mich. 441, 160 N.W. 645; M. E. Gillioz, Inc., v. Lancaster, 195 Ark. 688, 113 S.W.2d 709; Phillips v. Keltner's Adm'r, 276 Ky. 254, 124 S.W.2d 71; Free v. Home Telephone Co., 66 Ind.App. 9, 116 N.E. 600; Kancevich v. Cudahy Packing Co., 184 Iowa 799, 169 N.W. 186.

 Neither is it actionable negligence that an employer fails to anticipate carelessness or lack of care on the part of his employee. Under the prevailing conditions which were perfectly obvious snow on the footboards could not have been avoided. It was a natural and necessary result of existing climatic conditions. Of course, even though the condition resulted

from climatic causes defendant might still be negligent if it did not make available to the employees instruments or utensils with which they might have removed the snow and ice. There were tools on the engine which could be used to remove snow and ice. There were the fireman's coal pick, his shovel, shaker bar, and sand was procurable from the engine, as were also warm ashes or cinders. The footboard in question was in fact cleaned off once during the night by Jaeger, one of the switchmen. It does not appear what tools he used. Plaintiff, however, complains that the shovel was kept in the cab and had to be borrowed from the fireman when he was not using it, and that it was not strong enough to cut the accumulations of ice and snow; the shaker bar was better but it was dull at the end and could only be used to pound with and was kept in the cab; sand tended to run off the snow and ice, it was kept on the dome on top of the boiler and not in a convenient position; live coals, it is said, were hard to secure out of the firebox with a scoop shovel and it took two employees to hand them down in the scoop shovel; the fireman's coal pick was sharp at the end and if used it might split the footboard. These, in general, are the objections to the instrumentalities at hand as summarized by plaintiff. Salt was in the depot but was thought not to be available. As a footboard is only about 3 feet long and 1 foot wide the removal of snow, sleet or ice would not seem to be a complicated or difficult process, but a very simple one. It appears from the evidence that any of these tools would suffice, and sand and ashes were helpful. Conceding there may have been better methods or instruments for removing snow and ice or preventing its accumulation, the failure to make them available in itself was not negligence. The employer is not required to furnish the newest or even the safest and most approved devices if the employee is not deceived as to the degree of danger to which he is subjected. Darracott v. Chesapeake & O. Ry. Co., 83 Va. 288, 2 S.E. 511, 5 Am.St.Rep. 266; Baltimore & O. R. Co. v. Groeger, 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419; H. D. Williams Cooperage Co. v. Headrick, 8th Cir., 159 F. 680. These instrumentalities were in general use and met with general approval for the performance of this work. Two other carriers doing switching in Minnesota were shown to follow exactly the same practice. While custom or usage may not be controlling as fixing the standard of care it may be accepted where the custom or practice is not in itself negligent or in disregard of the safety of the employee. The decision of the managing officers of doubtful questions relating to methods of operation or equipment are deemed to be presumptively right and ordinarily they may not be made the foundation of liability to the employee. Canadian Northern R. Co. v. Walker, 8th Cir., 172 F. 346, 24 L.R.A.,N.S., 1020.

We find no substantial evidence tending to prove any negligence on behalf of the defendant in connection with its duty to furnish its employee with a reasonably safe place in which to work, or in connection with its duty to furnish him with appropriate tools and appliances. What is said by the Supreme Court of Iowa in Kancevich v. Cudahy Packing Co., supra, is here apposite. It is there said [184 Iowa 799, 169 N.W. 187]: "The proximate cause of his injury was a slip on ice. There was no ice when he went to work. It came into existence because some ice would necessarily fall upon the platform as plaintiff worked, and because of his work. He slipped because of ice that he knew must accumulate because of the work; work that he had been doing for more than a year. He was hurt because his bodily movements did not take into consideration what he knew to be a necessary incident of his work."

McGivern was a foreman and with the tools available could have cleaned the snow from the footboard, or he could have sanded the footboard or put ashes on it; he could even have put hot coals on the iced board if that seemed to him to be necessary. It appears from the evidence that he rode the switch engine from the west end of the yards to the point where a string of cars were coupled on to a locomotive, a distance of about 1,600 feet. When the cars were reached the switch engine stopped. McGivern could then, had he thought it necessary or advisable, have cleaned or sanded the footboard. However, he got back on the footboard and returned riding the engine to the west end of the yard. Having thus ridden the footboard for a distance of 1,600 feet he was in a position to know whether it required cleaning. If it did he should have cleaned it, or have the other members of his crew do so.

The defendant could not anticipate that McGivern would not exercise proper

care for his own safety and we can only conclude in view of his knowledge and experience, that he did not believe the footboard required cleaning. As said by the Supreme Court in Aerkfetz v. Humphreys, 145 U.S. 418, 12 S.Ct. 835, 836, 36 L.Ed. 758: "It cannot be that, under these circumstances, the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employes who had all the time knowledge of what was to be expected". In Chesapeake & O. Ry. Co. v. Nixon, 271 U.S. 218, 46 S.Ct. 495, 496, 70 L.Ed. 914, a section foreman while riding a motor car was overtaken by a train. The court, holding that he should have relied upon his own watchfulness and kept out of the way of the train, said: "The Railway Company was entitled to expect that self-protection from its employees". But it is said that conceding McGivern's negligence it was only contributory negligence and hence not a defense. There can, of course, be no contributory negligence, properly speaking, unless there is negligence on the part of the defendant. Here the negligence was that of McGivern alone. It was his failure to act that resulted in his injury and defendant cannot be held liable therefor. Frese v. Chicago, Burlington & Quincy R. Co., 263 U.S. 1, 44 S.Ct. 1, 68 L.Ed. 131.

 It remains to consider the contention that defendant was guilty of negligence in not having adopted a rule to govern a situation such as that disclosed by the record. If the occupation or work is complex and dangerous, the employer should safeguard his employees by the adoption of approved methods and by the promulgation of rules and regulations. However, the failure to adopt any particular rule is not proof of negligence unless it appears that the employer in the exercise of ordinary care should have foreseen and anticipated the necessity for so doing. If the work, as here, is simple in character and free from complications or complexities, the employer is under no obligation to adopt any rule with reference thereto. Boyer v. Eastern Ry. Co., 87 Minn. 367, 92 N.W. 326; Johnson v. Smith Lumber Co., 99 Minn. 343, 109 N.W. 810. The defendant here had a general rule in effect reading as follows:

"M. Employes must exercise care to prevent injury to themselves or others by observing the condition of equipment and the tools which they use in performing their duties and when found defective will, if practicable, put them in safe condition, reporting defects to the proper authority."

 Two witnesses, both division superintendents, testified that this rule required the employee using the footboard to correct a dangerous condition arising during his work due to ice and snow. It is, however, urged by plaintiff that a more specific rule should have been in force because defendant had a specific rule as to the duty of a station agent regarding cleaning station platforms. We apprehend, however, that rules are not required to direct or describe in detail the method of doing every conceivable item of commonplace work. The station agents are primarily the contact agency between the company and the public and through those stations the public gains access to the trains and services of the railroad. Fixing the responsibility for clearing station platforms and walks of snow, ice or dirt, cannot be invoked as a precedent or by analogy in the case of a switchman using a footboard on a switch engine. Missouri Pac. R. Co. v. Aeby, supra. There was testimony by a witness to the effect that in his opinion "some rule should have been adopted placing responsibility with reference to the removal of snow and ice from footboards". He expressed the opinion that the general yard master should be responsible to carry out the rule. The testimony lacks the necessary basic element, complexity. At most this evidence shows that the promulgation of such rule might be desirable. The witness on cross examination said that "when the footboard got too slippery he sometimes borrowed a fireman's shovel and scraped it off when he thought it needed it, and he got sand from the sander and put it on the footboard," he also said he had heard of switchmen borrowing the shaker bar to clean the footboards and no fireman or engineer ever refused to let him use a shaker bar when he wanted to use it. He had also used hot coals. The testimony of this witness confirms the testimony of others that the person using the footboard should be responsible for its condition. The character of the work is such as to make this necessary. The crew may be separated and in the interim snow may accumulate so that the only practical way of caring for the situation is by fixing the responsibility, not on someone who might be far distant from the engine, but on the party actually using the footboard.

We have given careful and detailed consideration to the various other contentions urged on this appeal but find them without merit. The judgment appealed from is, therefore, affirmed.