## Rankin *v.* Iron City Sand and Gravel Corporation, Appellant.

Argued March 28, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused May 7, 1947.

*James J. Burns, Jr.,* for appellant.

*William D. Hilldorfer,* for appellee.

OPINION BY MR. JUSTICE DREW, April 14, 1947:

Plaintiff, Peter Paul Rankin, a seaman, brought this suit in trespass to recover damages for personal injuries alleged to have been sustained as the result of the negligence of his employer, defendant, Iron City Sand and Gravel Corporation. The action is brought under section 33 of the Merchant Marine [Jones] Act, 41 Stat. 1007, 46 U.S.C. section 688. At the trial a verdict was returned for plaintiff and after defendant's motion for judgment n.o.v. was refused, defendant took this appeal.

When the error alleged on appeal is the failure of the trial court to grant defendant's motion for judgment n.o.v., this Court is required to construe all facts and inferences deducible therefrom in the way most advan-

tageous to the plaintiff. When we apply this well established rule to the record of this case, the following factual situation is established.

About 8 o'clock the evening of September 15, 1944, defendant's tow boat "Prosperity" with three empty barges, each 175 feet long, left the 22nd Street landing (Pittsburgh), and proceeded down the Monongahela River. Two of the barges, arranged alongside each other, were in front of the boat and the third barge was attached to its starboard (right) side. The tow had gone but a short distance when the water pump on the Diesel engine ceased working and it was necessary to stop the engine at once. The captain ordered the engine shut off and decided to tie up at the landing of the Pittsburgh Coal Company on the south bank a short distance downstream.

Plaintiff, who performed the duties of a mate, was notified by the captain that he would try to make the Pittsburgh Coal landing. As it was plaintiff's duty to handle the rope used in landing, he went to the port (left) barge, and, when it became apparent that the captain was going to land with the forward end of the tow, plaintiff walked to the front left corner of the barge. On the front of the barge, a line deck, 27 feet across and a few feet wide, provided working space for the crew. Bulkheads or hoppers separated the line deck from the large cargo bin which was empty. This line deck was covered with sand and gravel which extended over plaintiff's shoetops. It was then about 9 P. M., the night was dark and this deck had no artificial light. The landing rope, 40 feet long and weighing 25 pounds, was not in its customary place near the center of this front deck, but without plaintiff's knowledge, it had been placed about a foot and a half from the left timberhead. Scrap metal, screens and spare parts from the dredge equipment were scattered about so that the space in which plaintiff was able to work was limited to two or three feet square.

As the barge approached the dock, plaintiff had to work quickly. He cast the landing line a distance of fifteen or twenty feet and caught its "eye" around the quarterhead, then visible on the dock because the captain had turned the spotlight of the "Prosperity" directly on it. This spotlight did not in any way lessen the darkness of the place where plaintiff was working. Plaintiff then made one turn of the line around the left timberhead of the barge on which he was standing. While he was thus hastily working in the dark, his footing unsteady because of the sand on the deck, his right leg became entangled in a loop of the uncoiling rope. As the drifting barge drew the rope tight against the timberhead, plaintiff's right leg was completely severed below the knee.

It is not disputed that plaintiff was a "seaman" on a navigable river and therefore within the scope of the Jones Act: *O'Donnell v. Great Lakes Co.,* 318 U. S. 36; *Warner v. Goltra,* 293 U. S. 155. Nor is the jurisdiction of the court questioned. It is firmly estabished that the state courts of Pennsylvania have concurrent jurisdiction with the federal courts to try actions under the Jones Act: *Garrett v. Moore-McCormack Co., Inc.,* 317 U. S. 239; *Engel v. Davenport,* 271 U. S. 33.

The operative provision of the Jones Act, so far as presently relevant, provides: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . ."

The Federal Employers' Liability Act, 35 Stat. 65, 45 U. S. C. section 51, is incorporated into the Jones Act by reference. The applicable excerpts of that statute as of June 5, 1920, as as follows: "Every common carrier by railroad . . . shall be liable in damages to any person

suffering injury while he is employed by such carrier
. . . for such injury or death resulting in whole or in
part from the negligence of any of the officers, agents, or
employees of such carrier, . . ."

The Jones Act is an integral part of the maritime law,
and the rights of parties in a suit under the Act must be
determined by the federal statute and by admiralty
principles: *Garrett v. Moore-McCormack Co., Inc.*, supra.
Consequently many of the usual rules of negligence law
in Pennsylvania are not applicable to the instant case.
The admiralty doctrine of comparative negligence ap-
plies. Contributory negligence, however gross, in a suit
in admiralty or under the Jones Act will not defeat
recovery but only mitigate damages: *Beadle v. Spencer,*
298 U. S. 124. Similarly the doctrine of assumption of
risk will not bar recovery under this Act, although in
proper circumstances it too will result in mitigation of
damages: *The Arizona v. Anelich,* 298 U. S. 110; *Socony-
Vacuum Co. v. Smith,* 305 U. S. 424. See also *Blair v.
B. & O. R.R. Co.,* 323 U. S. 600.

The only possible foundation for a suit under the
Jones Act is negligence: Benedict on Admiralty, 6th Ed.,
Vol. 1. section 25. *Jamison v. Encarnacion,* 281 U. S. 635,
construed the word "negligence" as it is used in this Act.
The court at p. 640, said: "The Act is not to be narrowed
by refined reasoning or for the sake of giving 'negligence'
a technically restricted meaning. It is to be construed
liberally to fulfill the purposes for which it was enacted
and to that end the word may be read to include all the
meanings given to it by courts and within the word as
ordinarily used. *Miller v. Robertson,* 266 U. S. 243, 248,
250."

In the instant case it was essential for plaintiff to
prove defendant's negligence and the causal connection
between the negligent condition or act and the injury.
Plaintiff contends that defendant was negligent in fail-
ing to provide him a reasonably safe place in which to
work.

It is settled "that the ship owner is under a duty to furnish the seaman with a safe place in which to work": *Socony-Vacuum Co. v. Smith,* supra. That this was not done has been determined by a jury, and upon ample evidence. Plaintiff's own testimony, corroborated by other witnesses, indicated that there was no lighting of the place where he was required to work, that the rope he had to handle was placed in an unusual and unsafe place and that four or five inches of sand and gravel covered the line deck where the accident occurred. A steady footing would be particularly essential when heaving a heavy rope a distance of fifteen or twenty feet. Plaintiff testified as follows: "Q. I said, just how did the sand affect your ability to stand? A. Sliding around, unsteady footing." The direct causal connection between plaintiff's sliding around because of his unsteady footing on the sandy deck and his foot becoming entangled in a loop of the uncoiling landing line is obvious. The lack of lighting materially added to the danger of the uncoiling rope. Sufficient evidence of an unsafe working place was presented at the trial to make defendant's alleged negligence a question for the jury.

A somewhat analogous fact situation was presented in *Holm v. Cities Service Transp. Co.,* (C. C. A. 2nd Cir.) 60 F. 2d 721. In that case the shipowners' negligence, in permitting a pool of oil, in which a seaman slipped, to remain on the deck of a tanker being loaded with oil, was held to be a question for the jury even though greasy decks are a necessary concomitant to loading an oil tanker.

A review of the record convinces us that there is sufficient evidence to sustain plaintiff's contention that the court below properly submitted the case to the jury.

Judgment affirmed.