Kurimsky, Administratrix, *v.* Unity Railways Company, Appellant.

Argued September 30, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused November 24, 1947.

*J. Roy Dickie*, with him *Hamilton A. Robinson* and *Dickie, Robinson & McCamey*, for appellant.

*George S. Goldstein*, for appellee.

OPINION BY MR. JUSTICE LINN, November 10, 1947:

The body of Stephen Kurimsky, who had been working as extra brakeman of a crew engaged in switching empty coal cars, was found under the locomotive about 6:30 P.M. November 30, 1944. His administratrix sued under the Federal Employers' Liability Act (45 USCA sec. 51) and alleged that his death resulted from negligence in changing orders during a shifting operation without notice to him. She recovered a verdict. Defendant now complains that judgment n. o. v. was refused.

There were five men in the crew in charge of a caboose, a locomotive and tender. The conductor ordered a shift of seven empty coal cars from track 2 to track 1, parallel tracks, extending north and south. Witnesses said it was dark, very windy, slippery and snowing. With the caboose attached to the front or north end of the locomotive, they moved south on track 2, automatically

coupled the tender to the seven cars and pulled them northward; crossing switch number 2 on defendant's road and a cross-over switch connecting with the B. & L. E. Railroad to a point where the train stopped preparatory to pushing the cars southward on to track 1, where they were to be left. To facilitate that movement, Kurimsky threw switch number 2 to allow the train to pass to track 1 and then gave a lantern signal to proceed. This signal was relayed forward to the locomotive engineer, some 300 feet away, who then started his train southward to cross over to and leave the cars on track 1. Kurimsky was last seen alive standing at or about switch 2. There is evidence from which the jury could find that it was his duty to board the train as it passed him at that point on its way southward and, when they reached the point where the cars were to be left, to set the brakes on the lead car to keep them in place on track 1 and then to come forward and uncouple the cars from the tender and engine. In the absence of evidence to the contrary, it is presumed that he did his duty and got on the train as it passed: compare *Tennant v. Peoria, etc., Ry. Co.,* 321 U.S. 29, 34. When, after the train stopped on track 1, Kurimsky did not appear to uncouple the cars from the tender, a search was made for him and he was found under the engine. His lantern, somewhat damaged, was found between the rails about 70 feet north of the engine at a point over which the engine had passed. Blood was found on the end of the tender and on the front wheel of the car nearest the tender and also on a wheel and on the chute sheet of the north hopper pocket of the second car. There were no marks on the front of the engine.

After Kurimsky gave the lantern signal that the switch was set for the shift to track number 1, and after that movement began, the conductor, by signal to the engineer, ordered the caboose, which was in front of the locomotive, to be uncoupled. To comply with that order, the engineer had to reduce his speed and come to

a stop or near-stop to allow a trainman to uncouple the caboose. There is evidence that from a speed of ten miles per hour, the train came to a stop in "a few seconds." This sudden stop, which interrupted the movement to track 1, plaintiff contended, caused Kurimsky to fall to the track from the car on which it was his duty to ride.

The statute imposes liability for "injury or death resulting in whole or in part from negligence." See *Rankin v. Iron City Sand, etc.,* 356 Pa. 548, 552, 52 A. 2d 455. The engineer testified that the order "to throw off the caboose was a sudden order." He was asked "Q. Not being aware that the order was going to be given, the suddenness of that order would have something to do with the suddenness with which you reduced your speed? A. That's right. Q. And that, in turn, would affect the amount of jerk on the cars. Isn't that right? A. Possibly would, yes." He said that to detach the caboose was "a matter of a few seconds." The court submitted to the jury whether "there was a sudden jerk or jolt or jar of this train which threw Kurimsky from the train and to the tracks in such manner as to cause his death?" The judge also said, "If there was no sudden or unusual jerk or jolt of any kind, then of course there is no negligence in this case, and the plaintiff's case falls."

Appellant contends that the distances travelled by the train during the described movements demonstrate that the change in the order required to detach the caboose could not have resulted in Kurimsky's falling through or between cars to the track at or near the points where he and his lantern were found. The witnesses, whose statements were not consistent with each other, did not testify concerning locations and distances with mathematical exactitude; it was, however, the duty of the jury to find the facts from their evidence. The jury could find that Kurimsky was on the train for the purpose of performing his duty; that he was not advised of

the change of orders for the switching movement; that the sudden stopping, in the circumstances, may have jolted him off the train, whereas, if he had known of the change of orders, he might have been prepared for and have avoided the danger. The evidence brought the case within the statute. Compare *Tennant v. Peoria, etc., Ry. Co.,* 321 U.S. 29; *Lavender v. Kurn,* 327 U.S. 645; *DeLellis v. P. & L. E. R. R. Co.,* 350 Pa. 436, 39 A. 2d 588, which considered the failure to warn of an unusual switch-over of an eastbound train to a westbound track.

Judgment affirmed.